DONALD v. SCOTT.

Ex parte GONZALES.

(Circuit Court, D. South Carolina. December 2, 1895.)

1. INTOXICATING LIQUORS—SOUTH CAROLINA DISPENSARY LAW.

Section 21 of the South Carolina dispensary law, providing for the criminal punishment of any one who, by himself or with others, keeps a club or other place where liquors are received or kept for use, barter, or sale as a beverage, has no application to a social club, some of whose members, individually, keep at the club house liquors for their own personal use.

2. SAME—VIOLATION OF INJUNCTION—PEACE OFFICERS.

Where constables, going to make an illegal seizure of liquors, in pretended execution of the South Carolina dispensary law, and in violation of an injunction, were accompanied by municipal police officers, who acted merely as peace officers, without taking any part in the seizure, held, that such police officers were not guilty of any violation of the injunction.

3. SAME.

Where a chief dispenser, under the South Carolina dispensary law, in the discharge of duties prescribed by the law, received from certain constables liquors seized by them in violation of an injunction, and merely retained them awaiting a demand therefor, held, that he was not guilty of any violation of the injunction.

4. SAME—ACTS OF CONSTABLES.

Where constables, acting in pretended execution of the South Carolina dispensary law, seized packages of liquor labeled and marked as the private property of an individual, with previous positive information that they were his property, held that, such seizure being in violation of a previous injunction, it was no defense or excuse that the liquors were seized in a clubroom, where they were kept by the owner for his personal use.

This was a petition filed by N. G. Gonzales in the case of James Donald against J. M. Scott and others, praying for an attachment against certain police officers, constables, and the chief dispenser of the state of South Carolina for alleged contempt by violating an injunction.

H. C. Patton, for plaintiff.

Wm. A. Barber, for respondents.

SIMONTON, Circuit Judge. This case comes up by way of petition in the main cause. The petition, in substance, sets forth that the petitioner, some time after the order and injunction in this case, purchased from a merchant in Statesville, N. C., a package of whisky, and imported it into this state by the Southern Express Company; that the whisky was bought and imported and intended for his own personal use and consumption, in no way for sale, barter, or exchange; that he is a bachelor, living in rooms, and, having no convenient home, he is a member of the Columbia Club; that, using his privileges as a member, he placed this package in one of the clubrooms, in the care of the steward, and, after using a part of it for himself, he was converting the remainder into what is known as "cherry bounce," to be used by himself; that, while it was so in this room of the club, the respondents, on or about the 17th of August last, seized and carried it away, notwithstanding that the labels and marks on the packages showed that its contents were the product of and imported from another state into this

state by means of a common carrier, that the petitioner was the importer, and that the whisky was for his own use and consumption; that the petitioner is the editor of the newspaper called the "State," published in Columbia, a fact well known to the public, and is in no wise engaged in or concerned with the selling of spirituous liquors. Upon the filing of the petition the rule was issued calling upon the respondents to show cause why they be not attached for disobedience of the order of this court.

Two of the respondents—Morehead and Strickland—are policemen of the city of Columbia. In their return they say that, under the instructions of the city council and of the mayor of Columbia, they obey all requisitions made upon them by state constables who are charged with the duty of enforcing the dispensary law, to the extent of accompanying them, and of seeing that the peace is preserved; that this was their position at the time of the seizure complained of; that they knew that their co-respondents had a search warrant; that they had no part of duty in the seizure. The other respondents—J. T. Speed, S. G. La Far, and A. T. Davis—are state constables; J. T. Speed being a chief constable. In their return, after interposing a formal defense denying the validity of the order of injunction, and the right of the petitioner to the protection thereof, as he was not a party in the main cause, and disclaiming any attempt or desire to violate the order of this court, they proceed to state the facts connected with the case: That they had been informed that whisky was stored in the clubroom of the Columbia Club; that persons habitually resorted to these rooms for the purpose of drinking; that one of them,—S. G. La Far,—on this information, applied for and obtained a search warrant from Trial Justice Troy; that they executed the warrant by entering the rooms of the clubs; that they found rooms contained billiard and pool tables, and another room in which was a bar counter, bar fixtures, sideboard, and all appliances usually kept in a bar room; they found four bottles of whisky under the counter of the bar, and within the bar beer bottles on ice; that they found a large case, containing small compartments, locked, and in many of these compartments were bottles,—one or more quart and pint bottles; that in a small room they found three kegs of cherry bounce, one marked in the name of the petitioner, and two in the name of A. E. Gonzales; that, acting under the law, they took possession of all the liquor found, made an inventory of the same, and delivered them to F. M. Mixson, chief dispenser. F. M. Mixson, in his return, takes the same formal objection as his co-respondents, the constables, and then goes on to say that he admits the delivery to him of the package of liquor marked in the name of petitioner; that this delivery was made to him as state commissioner, under the dispensary law of South Carolina; that he received it in the discharge of his duty; that no demand has ever been made upon him for the package, and that he has never refused to deliver it to the rightful owner.

Ordinarily, the only questions which arise in cases of this character are: Was the liquor seized the property of the petitioner?

Did he himself import it from another state, or a foreign country, for his own personal use and consumption, and not for the purpose of sale, barter, or exchange? Did the person making the seizure know, or have reason to know, that all this was so? But the return of the officers making the seizure declares that this liquor was found in a place which was an habitual drinking resort, kept and used as a bar room, and designed to violate the law of the state,—one of the places declared by law to be a common nuisance. The natural inference was that the petitioner was contributing to these purposes. At all events, if this aspect of the case be true, this court, in the exercise of its discretion, would not interfere, but would leave the petitioner to seek his remedy at law. For this reason the case was referred under instructions to take all the testimony bearing upon it. This testimony has been reported, after having been taken with the aid of counsel, has been made the subject of exhaustive and able argument, and has been carefully considered. These facts have been established beyond controversy; indeed, there is no conflict as to them: The petitioner purchased this package of liquor in North Carolina. He imported it into this state through a common carrier. He purchased and imported it solely for his own use and consumption. He is not, and never was, engaged in the liquor traffic. His well-known position as a leading editor in Columbia forbids such an idea. The package was plainly marked in his name, disclosed the fact of its purchase, importation, and personal use. Labels on the package, showing all these, could not have escaped observation. Under ordinary circumstances, he has established his right to the protection of the order of this court. The right to import under the interstate commerce law would be idle, indeed, if the subject-matter imported were not protected when it reached its destination. As it is protected in its importation solely because it is imported for personal use only, it will be protected so long as this personal use continues. If any attempt be made to dispose of or use it in violation of the police laws of the state, this protection ceases. No law in South Carolina forbids the use of intoxicating liquors. The dispensary act, the last utterance of the legislative will on this subject, not only permits, but encourages, the free use of alcoholic beverages. The whole act is directed to promote this sale by the state, and every provision is made for putting its use within easy reach of all citizens of the state. Convenient localities are selected for this purpose. The tastes, means, and preference of the people of every class and condition are all consulted, as well in the equality of the liquor furnished as in the size of the packages in which it is sold. The sale within the state except by some officer or agent of the state is forbidden. In this prohibition is included every possible device which is a sale in all but name. The question, therefore, which controls this case is, was this package found in a place and under circumstances which justify its seizure? The answer to this question depends upon the purposes and character of the Columbia Club. In every city in every civilized country men engaged in occupations, which engross a large portion of their time, as well as

men of leisure, have found it as convenient as it is necessary to have a place where they can meet their friends and associates outside of the whirl of business, during their hours of rest. These places of resort are usually called clubs. Their chief features are social and intellectual. They are confined to no special class. In the larger cities these are clubs for every class, and in some cities for both sexes. There are clubs of literary men, university clubs, clubs for laboring men, actors' clubs, athletic clubs, young men's clubs, such as the Young Men's Christian Association, and others of like character. Their purposes are relaxation from work, social converse, and social amusement. The habits of the country induce some of these clubs to furnish facilities for indulgence in a social glass, if one should desire it. As one of the purposes of a club is a means of introducing one's friends from abroad to one's friends at home, and as the practice is universal to invite participation in a glass of wine or spirits, many think a club would be deficient in one form of civility which did not furnish means for this also. This, however, is a mere incident to, and not an essential feature of, a club. Very many clubs do not furnish drinking facilities. All well-appointed clubs have a reading room, with current daily, weekly, and monthly publications, writing rooms for use of correspondents, parlors for entertaining guests, rooms for games not forbidden by law. They furnish to men who are not with their family a substitute for the comforts and life of home. They enable others who cannot conveniently entertain their friends at home to do so comfortably at the club. Their use can be—doubtless is—very often abused. In general, they exert a great and wholesome influence. The testimony develops the fact that the Columbia Club was founded for these purpose by gentlemen of character, responsibility, and standing in Columbia. Its club list in evidence presents names, universally respected, of gentlemen engaged in almost every department of business. Before the passage of the dispensary law, the club afforded to its members and guests opportunities for drinking wine or spirits. No guest, however, could be admitted who resided in Columbia, and no guest could be admitted beyond a limited period. When the dispensary law was passed, the club at once obeyed it, and ceased to own or dispense or any wise to supply liquors forbidden by the act. It had rigidly adhered to this except during the period between that decision of the supreme court which declared the act unconstitutional, and the subsequent decision of the same court reversing that decision. After this second decision, the rule abstaining from ownership and sale and distribution of liquors was again rigidly enforced. The club has no interest or concern or ownership in any liquor. Individual members of the club did have at the club, for their own personal use and convenience, a small supply of liquor. This was the practice of a part only of the members of the club. Each one of these kept his package in locked receptacles, or which he had the key; and no one could use such bottles except at the request or with the consent of its owner. The evidence taken in this case discloses the fact that very much, if not all, of this liquor came from the state

dispensary. The bottles found under the counter all belonged to individual members of the club, and had just come from the dispensary. Mr. Mixson, the chief commissioner of the dispensary, testifies that he repeatedly sold whisky to club members, and knew that it was delivered at the club. He evidently thought them desirable customers, encouraged the introduction of his fine liquors into the club, and manifestly was of the opinion that neither their purchase of this liquor nor its use by them at the club was in violation of law. This action upon the part of this public officer, occupying the position and enjoying the intelligence of Mr. Mixson, goes far to contradict the idea that the club was a common nuisance in the eye of the law.

It has been earnestly insisted that the Columbia Club comes within the provision of sections 21 and 22 of the dispensary law. Section 21 has no application to this case. It punishes criminally any one who, by himself or with others, keeps a club or other place where liquors are received or kept for use, barter, or sale as a beverage. It has no further application. But the proof is clear that the club has no connection whatever with the keeping, dispensing, distributing, furnishing, giving away, or selling of liquors, directly or indirectly, and that it is neither within the letter nor spirit of the mischief against which this act is directed. It is difficult to see by what motive this raid on the club was actuated. The excuse given by the constables, or some of them, that one man or another asked why they raided blind tigers and brothels and did not raid the Columbia Club, and that, therefore, they raided the club, conceals some undisclosed motive. Be this as it may, in this case and in this jurisdiction the raid on the club cannot be noticed except so far as it bears upon the complaint of the petition, and may excuse the action of the respondents. From that point of view alone has it been discussed.

It appears, therefore, that the police officers went to this place on that occasion simply as peace officers, and that they took no part in the seizure. In their return they unnecessarily go out of their way to discuss other matters connected with the merits of the case and their co-respondents. It has somewhat the appearance of an excuse, which amounts to self-accusation. But it will be unnoticed. Let the rule be discharged as to them.

The return of F. M. Mixson shows that he received this package from the constables under the provisions of the dispensary law. This law gives him no control over the constables. He is not responsible for their seizure, and he seems to have acted within the lines of his duty holding the package awaiting a demand for it. Let the package of the petitioner be returned to him. When this is done, the rule as to F. M. Mixson will be discharged.

The respondents J. T. Speed, A. T. Davis, and S. G. La Far, in taking possession of this package, labeled and marked as it was, and with the positive information that it was the private property of the petitioner, violated the injunction and disobeyed the order of this court. The fact that the package was seized with this notice and information is alone to be considered. That it was seized

in a room of the Columbia Club cannot either excuse or add to their offense. The seizures which have been heretofore brought to the attention of the court have been made while the packages were in transit, or before the owners had reduced them into complete possession. This is the first case in which complaint is made a seizure some time after the arrival of a package, and while it was in complete possession of the owner. It is not difficult to understand how some persons would imagine that this made an important difference. This will be taken into consideration.

At the hearing, the attorney general being in court, his assistant, who represented the respondents, gave positive assurance that his office had instructed the constables to obey the order and injunction strictly; that of his own knowledge there was an honest apprehension on their part that the seizure was of contraband whisky, not protected by the order. As has been said, we can only discuss. The seizure of this package, the offense to the club, and any invasion of its rights, cannot come within the supervision of this court. Taking everything into consideration, it is ordered that the marshal take into his custody the respondents J. T. Speed, S. G. La Far, and A. T. Davis, and that, upon the payment of all the costs of this case and the delivery of the package to the petitioner, they be discharged, and go hence without day.