ERWIN et al. v. E. I. DU PONT DE NEMOURS POWDER CO. et al.

(Court of Civil Appeals of Texas. Dallas. April 19, 1913. Rehearing Denied May 17, 1913.)

1. PRINCIPAL AND SURETY (§ 169*)—EXHAUSTION OF OTHER SECURITIES.

The undertaking of a surety of a note is independent and additional to any security furnished by the maker, and a holder of the note may sue on the unqualified promise of the surety without reference to any collateral security available from other sources.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 474–489; Dec. Dig. § 169.*]

2. PRINCIPAL AND SURETY (§ 169*)—EXHAUSTION OF OTHER SECURITY.

An indorsee of a note before maturity for value and without notice need not foreclose a materialman's lien sought to be fixed by the payee, but may at once sue the sureties, especially where the value of the lien is uncertain.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 474–489; Dec. Dig. § 169.*]

3. APPEAL AND ERROR (§ 1073*)—HARMLESS ERROR—ERROR NOT AFFECTING RIGHTS OF PARTIES.

Where, in an action by an indorsee of a note against the maker and sureties and indorser, the judgment subrogated the sureties to any rights under a materialman's lien asserted by the payee and indorser, the question whether the pleading and proof authorized the subrogation was, as between the sureties, immaterial, because it did not lessen any equitable rights the sureties had to proceed against their principal for whatever part of the judgment they might be compelled to pay.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4240–4247; Dec. Dig. § 1073.*]

4. BILLS AND NOTES (§ 245*)—EVIDENCE (§ 423*)—PARTIES—SURETY—PAROL EVIDENCE.

One who signs his name on the back of a note, unaccompanied by any words expressing the nature of his undertaking, is as to an indorsee before maturity for value, and without notice, a surety, and parol evidence of any lesser obligation is inadmissible.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 558, 559; Dec. Dig. § 245;* Evidence, Cent. Dig. §§ 1957–1965; Dec. Dig. § 423.*]

5. EVIDENCE (§ 423*)—PAROL EVIDENCE—OBLIGATION OF SIGNERS OF NOTE.

Parol evidence is admissible, as between the signers of a note, to show the real character of the obligation intended to be assumed by one signing his name on the back of the note unaccompanied by any words expressing the nature of his undertaking.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1957–1965; Dec. Dig. § 423.*]

6. BILLS AND NOTES (§ 121*)—OBLIGATION OF PARTIES—PRINCIPAL AND SURETY.

Where a surety signed a note as maker under an agreement that he should be bound only on condition that a third person signed the note with him, and the third person signed his name on the back of the note without any words expressing the character of his undertaking, and the two made no contract between themselves, they were sureties, and must in equity contribute equally as sureties to the payment of the note.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 255, 256; Dec. Dig. § 121.*]

7. COMMERCE (§ 40*)—FOREIGN CORPORATIONS—DOING BUSINESS IN STATE.

A foreign corporation employing traveling agents in the state to solicit orders for merchandise, and shipping into the state merchandise to fill the orders, is engaged in interstate commerce, and is not within Rev. Civ. St. 1911, arts. 1314, 1318, requiring foreign corporations to obtain a permit to transact business in the state.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 29, 30; Dec. Dig. § 40.*]

8. CORPORATIONS (§ 642*)—FOREIGN CORPORATIONS—DOING BUSINESS IN STATE—INTERSTATE COMMERCE.

A foreign corporation engaged in the manufacture of powder sold powder to a resident, under a contract assigning to the resident trade territory and fixing the price. The corporation shipped, direct from its powder mills, powder to a construction company in Texas. A small

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

part of the powder used by the construction company was shipped from a point in the state. The corporation collected the money from the resident, and never presented any bill to the construction company. Thereafter the resident obtained a note from the construction company for the price and transferred it to the corporation. *Held*, that the corporation was not engaged in business in the state within Rev. Civ. St. 1911, arts. 1314, 1318, requiring a foreign corporation to obtain a permit to transact business in the state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2520–2527; Dec. Dig. § 642.*]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by E. I. Du Pont De Nemours Powder Company and others against T. R. Erwin and others. From a judgment for plaintiff and establishing the rights of defendants as between themselves, some of the defendants appeal. Reformed and affirmed.

Alexander, Power & Ridgway, of Ft. Worth, and Stennis & Wilson, of Weatherford, for appellants. A. B. Flanary, of Dallas, for appellees.

RASBURY, J. The appellee Du Pont De Nemours Powder Company, a foreign corporation, sued Mitchell-Pigg Construction Company, W. J. Sparks, J. W. Pigg, H. F. Mitchell, M. D. Plumlee, W. H. Vardeman, A. S. Chapman, J. W. Braselton, and T. R. Erwin, as makers, and Will R. Allen, as indorser, of a negotiable promissory note in the sum of $5,904.05, payable to said Will R. Allen.

Appellee powder company, in the pleading upon which it went to trial, alleged that it acquired the note sued upon from Will R. Allen, the payee, before maturity for value, and without notice of any of the defenses subsequently set up by the makers, etc. Appellee Allen, the payee in the note, adopted the pleading of the powder company and admitted his liability as indorser on the note, but denied any liability until all remedies had been exhausted against his several codefendants, and, further, that he received and accepted said note for value paid, without knowledge of the defenses alleged by his codefendants.

The appellant Erwin pleaded, in substance, that the note was given in payment of an account standing in the name of Allen against Mitchell-Pigg Construction Company for powder and other explosives, but which were in fact sold to said Mitchell-Pigg Construction Company by appellee powder company, through said Allen as its agent, and which had been used in the construction of the roadbed of the Chicago, Weatherford & Brazos Valley Railway Company, and that said Allen had established against the roadbed of said railway the statutory materialman's lien in order to secure the payment of the account covered by said note, the property against which said lien was established being of the value of $50,000, and then in the possession of G. A. Holland, appointed receiver of the property of both railway company and said construction company, by the district court of Parker county, and neither of which companies had been made parties to the suit upon the note. Upon the foregoing allegations it was asserted and prayed that the case be abated until appellee had first exhausted its remedy under said materialman's lien.

Erwin next pleaded that appellee powder company is a foreign corporation, without a permit from the state of Texas to transact its business here, and since the note was in payment of certain business transacted in Texas, appellee was not entitled to maintain the suit, etc.

Erwin then pleaded to the merits that he signed the note merely as surety for said construction company, and upon the express condition that J. W. Braselton would also sign same as a maker, which condition was known to said Allen and the powder company, through their agent and representative, A. B. Flanary, Esq., who also knew that said note was being taken for the use and benefit of said powder company, and that he did not know until after the acceptance and delivery of said note that said Braselton had limited his liability thereon by indorsing same only, and that he would not have signed same had he known that said Braselton intended to so limit his liability, and because of which he was released from liability thereon. Erwin also alleged that the transfer of the note from Allen to the powder company was a sham, for the reason that, in selling said material to the construction company and in taking said note in his name covering such account, said Allen was acting for and on behalf of the powder company and as its agent.

Appellants Sparks, Pigg, Mitchell, Plumlee, Vardeman, and Chapman, as touching the issues raised in their brief, pleaded suretyship against the construction company, and that appellee was in law compelled to exhaust its remedy under the materialman's lien as pleaded by the appellant Erwin, etc., and in which latter plea the construction company joined.

Appellee Braselton pleaded in abatement of the suit as set out in the plea of appellant Erwin; also that he signed his name across the back of the note on the express condition that he should be liable only as an accommodation indorser, and at no time agreed to become a surety for the payment thereof, and that all other parties thereto knew that he agreed to be bound only as indorser. He prayed judgment against all parties accordingly, except the powder company and Allen, the payee, in the note.

Upon trial before jury the court peremptorily instructed the jury to, and they did, return a verdict for the powder company against all the makers and the indorsers for the amount of the principal of the note, interest, attorney's fees and protest fees,

amounting to the gross sum of $7,086.71; for Allen, the indorser, against all the other defendants for a similar amount; for Braselton against all the defendants, except Allen, the indorser, for a similar amount; for all the defendants, except Allen and Braselton, against the construction company for a similar amount; and finding that all defendants should, to the extent of any payments they might make on the judgment, be subrogated to any lien established against the property of the construction company by Allen. Upon the directed verdict the judgment was entered accordingly, and from which all the parties, except Allen, the indorser, and Braselton, have appealed.

The following facts, and the essential ones, in substance, are undisputed: Will R. Allen, at the time and prior to the execution of the note sued on, was a merchant in the city of Dallas, engaged in the sale of powder and explosives, and was agent for the sale of the powder and explosives of appellee powder company, as well as agent for the sale of similar articles for another concern. All powder, etc., bought by him from the powder company was bought outright, and all owned by him and the agency "in a general merchantable sense," as he puts it, was that he bought and sold or carried in stock the powder company's powder, etc. No sales were made by him on commission. When he received an order from a customer for powder he exercised his judgment as to which concern's powder he would deliver. Under a contract with the powder company all powder bought by him from it was required to be stored in magazines erected by what he understood to be a subsidiary realty corporation of the appellee powder company, and for the use of which Allen paid no rental. Prior to the execution of the note Allen sold certain powder and explosives to the construction company, used by it in constructing the roadbed of the Chicago, Weatherford & Brazos Valley Railway Company. The bill for the powder, etc., being several months overdue and Allen being unable to collect it, he placed same with his attorney, A. B. Flanary, Esq., for collection and adjustment. Mr. Flanary finally secured the note sued on and delivered same to Allen, signed by all the parties as makers, except Braselton, who signed the same across the back without indicating the capacity in which he signed. Allen failing to negotiate the note in Dallas, or where the makers were known, went to Wilmington, Del., where the said powder company is domiciled, and by indorsing same got that concern to accept same as a credit on his account. The credit allowed on his account for the note did not go specifically in payment of the debt of the construction company; that debt having been prior to that time paid by Allen. The note was signed by all parties at Weatherford, Tex., and there delivered to Flanary, the attorney for Allen. All the makers had signed the note, except Erwin, when it was presented to Braselton in the forenoon of the day of its execution. When first presented to him he positively declined to sign it. After some discussion with those interested, he told them he would consider it further. Those in charge of the matter then went to Erwin seeking his signature on the note, whom, it seems, they had been negotiating with before, and he finally signed the note upon the express condition that Braselton would also sign and upon the agreement of the parties that he would do so. The note was again presented to Braselton, who examined it and said it was a good note, and that he would "indorse" it, which he did. There was much testimony, of course, developed in detail on the trial, but what we have outlined are the substantial facts, briefly told, upon which the rights and liabilities of the parties depend. It is proper to say, if that fact is important, that no representations were made by Flanary to any of the parties that induced them to sign the note, or which would affect their liability. Nor did he in any respect represent the powder company, but was solely representing Will R. Allen. Another fact necessary to state in passing upon one of the issues presented by this appeal is that about three days prior to the execution of the note sued on Will R. Allen prepared and filed, in the office of the county clerk of Parker county, an affidavit under the statute claiming a lien on the property of the Chicago, Weatherford & Brazos Valley Railway Company, for the cost of the powder, etc., furnished to the construction company, and which was used in the construction of the railroad company's roadbed, etc. Also, it was shown that G. A. Holland had been appointed by the district court of Parker county, and qualified as receiver of both the construction company and the Chicago, Weatherford & Brazos Valley Railway Company, and was in possession of and administering the assets of both at the time this suit was filed.

It is impracticable, and would extend this opinion too much, to discuss the assignments of all the parties separately, and for that reason we will notice the issues without reference to the assignments.

[1] The first issue presented here, and which was urged by all the makers of the note in the court below against the powder company, save Allen, is that the powder company was in law bound to first exhaust any security it had by virtue of the materialman's lien asserted by Allen against the roadbed of the Chicago, Weatherford & Brazos Valley Railway Company. On this issue an accepted authority says that in the absence of an express agreement to do so: "The rule is that a surety is not released by delay on the part of the creditor in enforcing collateral security for the debt; and the creditor or obligee is not required, nor can he be compelled to resort to such security, or to any other means in his power to enforce the pay-

ment of the claim, even though the principal becomes insolvent or the security eventually is lost." 32 Cyc. 97. The same authority also holds that a court of equity may "for good cause shown," and in order to protect the surety, require the creditor or obligee to proceed against the principal or his property, or against any security held by the creditor or obligee before resorting to any "security" furnished by the surety, but is not required to resort to useless proceedings, nor follow securities valueless by reason of prior liens. 39 Cyc. 234. The rule announced by Cyc. is settled law in this state. The measure of damages against the surety is the debt which he agrees to pay, and his liability to the holder of the note is not to be lessened, or his obligation to pay delayed, by the pursuit of other security furnished by the maker. The undertaking of the surety is independent and additional to any security furnished by the maker, and as a corollary the holder of the note may demand and sue upon the unqualified promise of the surety without reference to any collateral security available from other sources. Levy v. Wagner, 29 Tex. Civ. App. 98, 69 S. W. 112; Williams Bros. v. Rosenbaum, 79 S. W. 594.

[2] Further, on the trial of the case, it was not the duty of the holder of the note to take any steps that might have been taken to establish and foreclose the materialman's lien sought to be fixed by Allen against the Chicago, Weatherford & Brazos Valley Railway Company. The benefit to be secured by such a lien upon the roadbed of the railway company was dependent upon the validity of the lien; whether it had been fixed in point of time; whether the notice required by statute had been given by Allen, who was in effect a subcontractor, since he did not furnish the material to the railway company, but to the construction company, the contractors building the same; whether the security, if followed, was valueless and as a consequence its pursuit useless. The utilization of this security was further removed from the reach of the powder company by the appointment of a receiver for both the construction company and the Chicago, Weatherford & Brazos Valley Railway Company, and the ramifications of any attempt to utilize it further complicated and delayed. Under the facts recited, coupled with the duty of the sureties to protect themselves in any security inuring to their principal, to have abated the suit brought by the powder company, the purchaser for value and before maturity of the note, would have resulted in destroying the obligation assumed by the sureties when they signed the same, and upon which the powder company relied when it purchased the note from Will R. Allen, the original payee, and subsequent indorser of same. Hence we conclude the court below did not err in overruling the plea in abatement of the appellants.

[3] It may also be said that the judg-ment of the court below protects the sureties as directed by statute, and subrogates them to any rights under the materialman's lien asserted by Allen. Whether the pleading and proof authorized such subrogation is immaterial, since it at least in no respect destroyed or lessened any equitable rights the sureties have to proceed against their principal for whatever portion of the debt they may be compelled to pay.

[4] The next issue raised in the court below and properly presented here is the refusal of the court below to submit to the jury whether or not Erwin signed the note on the express agreement that Braselton would sign the same, and that he and Braselton should be bound alike thereon, and whether or not Braselton signed the note as an indorser merely. As against the powder company we think there was no error in refusing to submit such issues, since evidence shows, as a matter of fact, that the powder company came into possession and ownership of the note before maturity for value paid, and without notice of any rights or equities of those whose names are signed thereto other than such notice as was imported by the note itself. All the parties, including appellant Erwin, signed as makers, except appellee Braselton, who signed his name across the back of the note. Such indorsement across the back of a note by one not the payee in the note is held by the courts of a majority of the states to constitute the indorser a joint maker or surety, and his liability unlike that of an indorser or guarantor, when the signature is unaccompanied by words expressing the nature of his undertaking. Barton et al. v. American National Bank, 8 Tex. Civ. App. 223, 29 S. W. 210; Latham v. Flour Mills, 68 Tex. 127, 3 S. W. 462; Cadwallader v. Hirshfeld, 62 N. J. Law, 747, 42 Atl. 1075, 72 Am. St. Rep. 671, and note.

[5] The cases cited also hold that parol evidence is admissible as between the signers of the note to show the real character of the obligation intended to be assumed by such indorser. See, also, Behrns v. Rogers, 40 S. W. 419; Rice v. Farmers', etc., Bank, 42 S. W. 1023. And in the instant case the court did permit Braselton, as against his comakers, only to show the real contract between them. As to the powder company he was by law a surety. So as between Erwin, who signed as a principal, and the powder company no evidence was admissible to show any lesser obligation than the note imported, since the latter, by the evidence was shown to have bought the note before maturity for value, and without notice of any agreement between the parties to the note which would affect Erwin's liability.

[6] But under appropriate assignment of error Erwin asserts the proposition that, having signed the note on the express agreement that Braselton would also sign the note, and Braselton having signed the note at its inception across the back thereof

without words expressing the character of his undertaking, he was in law a surety in like manner as Erwin, and parol testimony was inadmissible to show a different undertaking, and upon which to base a judgment against Erwin in favor of Braselton. With reference to such proposition, the evidence is undisputed that all parties to the note were in fact sureties for the construction company, since the debt was not the individual debt of any of them. The evidence is also undisputed that all the makers of the note were principals as to Braselton, except Erwin, under the agreement that he should be a surety only as to them, and also that he had no knowledge of the condition upon which Erwin signed. As to Erwin it is undisputed that he agreed to be bound only on condition that Braselton signed the note with him, and the legal inference from such condition is not that he should be bound to Braselton as principal, but that both should be equally bound. To hold otherwise would be to destroy the very condition he imposed and render it meaningless. It is also undisputed that Erwin had no notice, nor was a party to the agreement between Braselton and the other parties to the suit. Thus it will be seen the question arises, Was the evidence and the manner of signing the note such as in law to constitute Erwin a principal as to his cosurety, Braselton, and exempt Braselton from the general rule of equal contribution between sureties? "The principle on which one surety is regarded as liable as a principal to another surety is that a state of facts is shown to the court from which it appears positively, or by fair and reasonable inference, that such surety intended to stand in the character of principal as to subsequent signers." Dulling et al. v. Weekes et al., 40 S. W. 178. Applied to the undisputed facts in this case the judgment of the court below is not sustained by the rule announced in the case cited. While it may be correct to say that the statements made by Braselton to those who induced him to sign the note made him secondarily liable as to them (but which is not necessary for us to decide), and while it may also be said that he was unaware of the agreement made with Erwin that Erwin should only be bound as Braselton was bound, it is also true that as Braselton's signature appears upon the note he, as relates to Erwin, is a surety in the same manner and by the same process of reasoning that he is a surety as to appellee, powder company, since his indorsement of the note is unaccompanied by words of limitation, and since his agreement with those who secured him to sign the note is of no greater binding force than is the agreement made by appellant Erwin with those who secured him to sign the same note, and that as a consequence parol testimony was admissible against Braselton to show how Erwin intended to be bound upon the note. The rule is well settled that as between

themselves the signers may always show the real character of their undertaking, and the contract of appellant Erwin could not be changed by any subsequent agreement between the other signers. Erwin and Braselton made no contract between themselves. On the contrary, their agreements were with the other sureties, and neither participated in, nor was bound by, the same. The result of their contracts in law was that as to them the other sureties became principals, and they in turn became equally bound and should in equity contribute equally as sureties to the payment of the note; and, that being true, we think the court erred in directing a verdict for Braselton against Erwin.

[7, 8] The next issue raised by assignments of error in various ways is that the sale of the powder and explosives, in payment of which the note sued upon was given, was in fact a sale by the appellee powder company, and not a sale by Allen as a local merchant, and that the manner of selling the same in law constituted the transaction of intrastate business, and the powder company being without a permit to transact business in the state of Texas, as provided by articles 1314, 1318, Rev. Stats. 1911, and 745, 746, Rev. Stats. 1895, it was as a consequence not entitled to maintain the suit upon the note.

Aside from what we have said in stating the facts in this case, the evidence develops without dispute that appellee powder company is a foreign corporation, with headquarters at Wilmington, Del., without a permit from the state of Texas to transact or solicit business or establish a general or special office within its boundaries. The greater part of the powder, etc., was shipped to the construction company direct from the powder company's wills, although a small portion was shipped from Dallas. Allen bought his powder from the powder company under a contract existing between them, which by its terms assigned to Allen certain trade territory, fixed the price he was to pay for the powder, including terms and discount, provided for drayage allowances in certain cases, declared the contract should be forfeited if Allen sold to his customers for less than the prices fixed by the powder company, provided that Allen should pay current prices for all supplies not mentioned in the contract, arranged for advance of prices in case of advance of freight rates or cost of packing, and provided for storage facilities to be furnished by the powder company. All the powder delivered to the construction company was bought by Allen under the terms of the foregoing contract, and was paid for by him before he received the note sued on in this case. The note was sold to the powder company as stated in the beginning of this opinion. The powder company also sent its representatives through the territory allotted to Allen, soliciting business without reference to the contract, which seems to have been its prerogative. Allen

wrote the construction company that one of these representatives, one Magill, would, at Allen's request, call upon the construction company, and asked them to sign certain contracts for the purchase of some or all of the powder delivered previously by Allen to the construction company, and which had been signed by appellee powder company before delivery. Magill secured the contracts. The contracts were signed by the powder company and the construction company, and recite that the powder company sells, and the construction company purchases, the explosives, etc., therein described, at the prices and upon the terms therein fixed, and that all supplies purchased thereunder shall be invoiced to the construction company through Will R. Allen, Dallas, Tex. The powder company did not present bill for, or demand payment of, the powder shipped under said contract from the construction company, but did collect same from Will R. Allen.

The foregoing are the facts surrounding the manner and method of the sale and delivery of the powder. The statute has been long since upheld and repeatedly sustained, and hence it becomes our single duty to determine whether the powder company was "transacting" its business in Texas, since it is not contended that it had either general or special office in the state, and since any participation in the sale by Magill, the admitted and accredited traveling agent of the powder company, will not constitute the same intrastate dealing, for the reason that the powder company, without securing a permit to do so, may send its agents into this state for the purpose of soliciting orders for merchandise to be shipped into this state from the state of its domicile. Miller v. Goodman, 91 Tex. 41, 40 S. W. 718; Barnhard Bros. & Spindler v. Morrison, 87 S. W. 378, et seq. Thus the only question remaining is, Was Allen the agent of the powder company, and was the storing of the powder, etc., in the magazine by Allen the act of the powder company? Allen says all powder shipped to him and by him stored, as well as all shipped direct to his customers, was purchased outright and paid for accordingly, including the powder shipped to the construction company, and his statement in that connection is not disputed, circumstantially or otherwise. The two contracts offered in evidence, the one on trial and the other on motion for new trial, do not in our opinion contribute anything towards establishing his agency.

A careful consideration of both shows, in our opinion, no intention to ship goods into Texas and store them and sell them from the magazines as the trade may require. On the contrary, said contracts seem to have been prepared solely for the purpose of holding Allen, as well as Allen's customers, to

certain fixed rules, terms, and prices demanded by the powder company, and which no doubt tended largely to the increase and profit of their business, and which it is fair to assume were conditions precedent to the purchase of their product by either Allen or the construction company. And in discussing whether Allen was the agent of the appellee powder company, we do not mean to be understood as holding that the sale by a resident agent of the merchandise or product of a corporation created under the laws of another state, and the shipment of the same into this state, would be an act of intrastate commerce. Such an act would be interstate commerce. Miller v. Goodman, supra. We have discussed the question of his agency for the reason that only upon the theory that he was the powder company's agent, and that as agent he had stored the merchandise in the magazines and then sold same, could the issue of intrastate commerce, under the proven facts, enter into the case.

In accordance with the views we have expressed in this opinion we find no error in the judgment of the court below, except that part thereof which finds that appellee Braselton is entitled to a judgment against the appellant Erwin. That judgment is set aside and held for naught, and it is here ordered that the judgment of the court below be reformed so as to provide that Braselton and Erwin shall jointly and severally recover judgment against the other makers of said note for any sum of money paid by them on said judgment, and that as between themselves each shall be proportionately liable to the powder company and Allen, as provided by statute regulating the rights of sureties.

Reformed and affirmed.