**SHEPPARD et al. v. MUSSER.** *

No. 13379.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 22, 1935.

Rehearing Denied Dec. 20, 1935.

William McCraw, Atty. Gen., John W. Pope, Jr., T. F. Morrow, William C. Davis, and Pat M. Neff, Jr., Asst. Attys. Gen., and Will R. Parker; Cr. Dist. Atty., and Cecil C. Rotsch, Asst. Dist. Atty., both of Forth Worth, for appellants.

Carl Goerte and Samuels, Foster, Brown & McGee, all of Fort Worth, for appellee.

BROWN, Justice.

This is an appeal by George H. Sheppard, state comptroller of public accounts of the state of Texas, and his official deputies and W. R. Parker, district attorney of Tarrant county, from an order of the district court of Tarrant county restraining them from collecting taxes claimed by them to be due the state of Texas by Glenn W. Musser, plaintiff in the trial court, in accordance with the provisions of the act of the Forty-Fourth Legislature, which became effective May 11, 1935 (see Acts of Regular Session, c. 241, p. 575 [Vernon's Ann.Civ.St. arts. 7047c—1, 7047cc—1, 7047cc—2, Vernon's Ann.P.C. art. 131c—1]), commonly known as the Cigarette Act.

Plaintiff's petition and defendants' answer thereto denying the equities of plaintiff's bill of complaint were duly verified, and the temporary writ of injunction was granted upon consideration of those pleadings and upon evidence introduced.

Plaintiff's first amended petition, on which he based his application for the writ, embodies these allegations:

"Your petitioner would respectfully show to the court that he is engaged exclusively

*Judgment modified — S.W.(2d) —.

and solely in the business of interstate commerce; that he is the owner of and operates a wholesale tobacco business known as the Texas Tobacco Company, and is engaged principally in the sale of cigarettes. That the said business, as hereinbefore alleged, is situated and located in the City of Ardmore in the State of Oklahoma, where his offices, warehouses, and vaults are located, and that he has been issued by the State of Oklahoma, a permit authorizing him to engage in the tobacco business. He would aver that such business as aforesaid is wholly interstate and is conducted in substantially the following manner: He makes his purchase of commodities in wholesale quantities from various manufacturers in the United States, which commodities are shipped in interstate commerce to him at his place of business in Ardmore, Oklahoma, and which goods are there stored in his warehouse and vault until subsequently sold in interstate commerce, the sales being made principally to citizens of and persons residing in the State of Texas. That in the State of Texas, he has in his employ approximately forty solicitors and salesmen who solicit orders of the citizens of Texas, and other persons in Texas, and that when the said orders are taken by the solicitors and salesmen each order is forwarded to the petitioner's place of business in Ardmore, Oklahoma, and there passed on and accepted or rejected by your petitioner and/or his agents. Where orders are accepted the cigarettes corresponding to the amount indicated in each order are taken from the stock in Ardmore, Oklahoma, and each order is separately packed, or the cartons composing each order are tied in a separate package, whereupon the cigarettes are then transported from Ardmore, Oklahoma, to the respective salesmen and solicitors of the petitioner who are located in the State of Texas, and the said salesmen and solicitors deliver the respective orders in the original packages, to the respective purchasers, collect the purchase price and remit to your petitioner, in instances where delivery cannot be accomplished, the cigarettes are returned in interstate commerce to the petitioner, at his place of business in Ardmore, Oklahoma.

"Your petitioner would further aver and show that notwithstanding the fact that the trades and sales of the petitioner were and are wholly those of interstate commerce, and all interstate shipments, and are therefore not subject to the requirements of the said cigarette tax law above referred to, the said George H. Sheppard, in his official capacity as Comptroller of the Public Accounts, acting through his servants, agents and employees, and through rangers of Texas designated to act in his department, have sought and are now seeking to make the provisions of this Act apply to your petitioner, and have annoyed and harassed and are now annoying and harassing this petitioner in the conduct of his business, and are seeking to cripple, destroy and devastate, and are crippling, destroying and devastating the business of your petitioner by seizing and confiscating his commodities, and have threatened to and will, unless enjoined, seize the conveyances upon which the same are transported, well knowing that the said commodities have been sold and shipped in interstate commerce, and that the same is in no legal sense liable to the payment of the said tax or to seizure and confiscation."

Then follow allegations of seizure and confiscation by defendants Sheppard and his deputies at different times and places of cigarettes which had been shipped into the state for delivery to plaintiff's customers in accordance with his alleged method of transacting business.

It is thus apparent that the trial court granted the writ of injunction because of the conclusions reached that the sales made by plaintiff were interstate transactions, and therefore were not subject to control by the Cigarette Act.

The validity of the Cigarette Tax Law, passed by the Forty-Fourth Legislature at its regular session—chapter 241, Acts 1935—is before us. If the law is sound, the appellee is entitled to only that protection which, as a matter of common right, should be thrown around his lawful interstate transactions.

The majority are of the opinion that the act attempts to make the consumption of an article of commerce a sale, and that this cannot lawfully be done.

If the state of Texas has the right to levy and collect a sales tax on any personal property that is bartered and sold, it necessarily follows that the sale must be made within the borders of the state. Otherwise, rights heretofore guaranteed under the interstate commerce laws of the United States can be entirely destroyed, by any state, through the juggling of words, and the provisions of the federal law protecting commerce in interstate transactions

would become "as sounding brass and a tinkling cymbal."

Let us analyze the provisions of the statute before us and see how it attempts to juggle words to effect its purpose.

Subdivision "h" of "section 1" (Vernon's Ann.Civ.St. art. 7047c—1, § 1(h) defines a "First Sale" as folows: " 'First Sale' shall mean and include the first sale or distribution of cigarettes in intrastate commerce, or the first use or consumption of cigarettes within this State."

No one can quarrel with the first portion of the definition. The first sale and distribution, in intrastate commerce, undoubtedly covers commercial transactions had and done wholly within the borders of Texas, but the additional words, "or the first use or consumption of cigarettes within this State," means no more nor less than that the state of Texas attempts to levy and collect a tax on all cigarettes that are used or consumed in this state, regardless of the lawful manner in which the right to use or consume them may have been acquired.

If a bona fide purchaser gives appellee a bona fide order for a quantity of cigarettes, in a bona fide interstate transaction, the state of Texas, by this act, says to the purchaser: "When delivery is made to you, you cannot use or consume your cigarettes unless and until either you or the seller places the stamp tax on them; and, if this is not done, your cigarettes will be seized and confiscated." If the state of Texas can do any such thing, it can go a step further and say to the friend of such citizen, to whom the Texan made a gift of a carton of cigarettes, lawfully purchased through interstate commerce: "You cannot use or consume these cigarettes unless and until you pay the State Tax."

"Section 2" of the act (Vernon's Ann. Civ.St. art. 7047c—1, § 2) provides the amount of tax and says: "The said tax shall be paid only once by the person making the 'first sale' in this State and shall become due and payable as soon as such cigarettes are subject to a first sale in Texas, it being intended to impose the tax as soon as such cigarettes are received by any person in Texas for the purpose of making a 'first sale' of same."

Were it not for what we believe to be an erroneous definition of "first sale" in the act, no complaint could be made of the quoted provisions; but what the Legislature has plainly said is: The said tax shall be paid only once by the person making the first sale or distribution of cigarettes in intrastate commerce, or by the first person who uses or consumes any cigarettes within this state, if such cigarettes have not had the tax paid thereon prior to the acquisition thereof by the user, or consumer, regardless of when, where, and how acquired.

The majority cannot bring themselves to the place where such a construction harmonizes with the plain rights of the private citizen, dealing in interstate commerce, which are guaranteed to him under the Constitution of the United States and the interstate commerce laws, passed by the national Congress, for his protection.

The case of Austin v. Tennessee, 179 U.S. 343, 21 S.Ct. 132, 140, 45 L.Ed. 224, is not an authority for upholding the Texas act. In that case the General Assembly of Tennessee had passed an act which provided: "That it shall be a misdemeanor for any person, firm, or corporation to sell, offer to sell, or to bring into the state for the purpose of selling, giving away, or otherwise disposing of any cigarettes, cigarette paper, or substitute for the same; and a violation of any of the provisions of this Act shall be a misdemeanor punishable by a fine of not less than $50."

Austin's conviction was affirmed by the Supreme Court solely upon the theory that the use of cigarettes is believed to be deleterious, particularly to young people, and that the state of Tennessee was acting within its police power in enacting the law as a public health measure.

The Texas act does not purport to be designed to protect the public health, but is purely a tax measure.

The case of Cook v. Marshall County, 196 U.S. 261, 25 S.Ct. 233, 49 L.Ed. 471, rests on the conclusions reached in the Austin Case. Cook brought the cigarettes into the state of Iowa to sell, not to use or consume, and he attempts to evade the state law, as a retailer, on the "original package" decisions of the Supreme Court.

The case of Superior Oil Co. v. Mississippi, 280 U.S. 390, 50 S.Ct. 169, 170, 74 L.Ed. 504, is not authority to sustain the act before us. In such case, the parties attempted to make a contract to convert a local business into an interstate transaction. Mr. Justice Holmes said: "The document hardly can affect the case,

because it is 'not within the power of the parties by the form of their contract to convert what was exclusively a local business, subject to state control, into an interstate commerce business, protected by the commerce clause,' Browning v. Waycross, 233 U.S 16, 23, 34 S.Ct. 578, 580, 58 L.Ed. 828; at least when the contract achieves nothing else."

Browning, supra, sought to evade an occupation tax placed upon "lightning rod agents or dealers engaged in putting up or erecting lightning rods within the corporate limits" of the city of Waycross. His contention was that, having acted as agent for the seller, a citizen in another state, he was engaged in interstate commerce and had the right to erect and put up the rods as a part of the interstate transaction. It is clear that, if he had delivered the rods to the purchaser and the purchaser had put them to use—had personally erected them on his premises—no tax could have been collected from either Browning or the purchaser.

In the opinion by Mr. Justice White, in the case of Rhodes v. Iowa, 170 U.S. 412, 18 S.Ct. 664, 668, 42 L.Ed. 1088, it is made clear that Congress intended "to cause the legislative authority of the respective states to attach to intoxicating liquors coming into the states by an interstate shipment, only after the consummation of the shipment, but before the sale of the merchandise; that is, that the one receiving merchandise of the character named should, *while retaining the full right to use the same,* no longer enjoy the right to sell free from the restrictions as to sale created by state legislation,—a right which the decision in Leisy v. Hardin had just previously declared to exist." (Italics ours.)

Appellee's bona fide customers, who purchase from him cigarettes, in bona fide interstate transactions, may lawfully retain them for use and consumption without let or hindrance upon the part of any officer within the borders of the state of Texas. Under the Texas law they cannot actually sell them to some other person without paying the lawful tax and this cannot be questioned. See, also, Donald v. Scott (C.C.) 76 F. 554, and Id. (C.C.) 76 F. 559.

The case of Sonneborn Bros. v. Cureton, Attorney General, 262 U.S. 506, 43 S. Ct. 643, 646, 67 L.Ed. 1095, involved the right of the state of Texas to collect a tax on petroleum products brought from another state into Texas, and Mr. Chief Justice Taft, delivering the opinion, said: "Many of the sales by the appellants were made by them before the oil to fulfill the sales was sent to Texas. These were properly treated by the state authorities as exempt from state taxation. They were in effect contracts for the sale and delivery of the oil across state lines. The soliciting of orders for such sales is equally exempt. Such transactions are interstate commerce in its essence and any state tax upon it is a regulation of it and a burden upon it" —Citing many authorities.

In Dawson v. Kentucky Distilleries & Warehouse Co., 255 U.S. 288, 41 S.Ct. 272, 275, 65 L.Ed. 638, Mr. Justice Brandeis, speaking for the court, said: " 'The whole value of the whisky depends upon the owner's right to get it from the place where the law has compelled him to put it, and to tax the right is to tax the value.' To levy a tax by reason of ownership of property is to tax the property. * * * It cannot be made an occupation or license tax by calling it so."

In the case at bar, any person who has lawfully purchased, in a bona fide interstate transaction, with appellee, a carton of cigarettes, has the lawful right to have same delivered to him by appellee and the further lawful right to use or consume the cigarettes without paying the tax provided by the law before us. The state of Texas can only require payment of the tax from such a purchaser when he undertakes to barter or sell the cigarettes. When the act is applied to one who has thus lawfully purchased in a bona fide interstate transaction, for the purpose of personal use and consumption, or even for the purpose of giving the cigarettes to another for such personal use or consumption, the tax thus sought to be exacted is a consumption and use tax, and calling it a sales tax does not make it such.

We have been furnished with a copy of the opinion in the case of Ex parte Sam Kimberlin, 86 S.W.(2d) 717, 720, not yet published [in State report], in an original habeas corpus hearing before the Supreme Court in Texas, and we find the following language in the opinion:

"We are decidedly of the opinion that even though plaintiff Klugsberg was engaged in interstate commerce, yet when the cigarettes were finally delivered by the

salesman to the respective purchasers and the purchase money was paid to the salesman, they ceased to be in interstate commerce and became a proper subject for taxation under the provisions of the Cigarette Law. The correct rule is reflected by such cases as Waring v. Mayor of Mobile, 8 Wall. (75 U.S.) 110, 19 L.Ed. 342, and Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S.W. 29, 750, 35 L.R.A. 241. It becomes immaterial to determine here whether the tax after the cigarettes were delivered to the purchasers was to be collected on the sale or on the consumption of same, as this is a matter wholly between the purchaser and the officers of the State. Even if the attempt by the Comptroller and his associates to lay the tax on the purchaser had an indirect effect upon the business of plaintiff (which we do not find it necessary to decide), this furnishes no ground for injunctive relief on his part. This is not a case of interference with business by reason of willful threats and intimidations, but the alleged interference results from a bona fide effort to enforce the tax laws of this state; and such acts cannot be held to be such an interference with the business of plaintiff as to justify relief by injunction."

The copy before us is stamped: "Opinion adopted by the Supreme Court, Oct. 9, 1935." Analyzing the opinion, the majority conclude that the language just quoted was not necessary to the approval by the Supreme Court of the ultimate conclusion reached by the Commission, and we do not know that the Supreme Court adopted and approved the quoted language.

The opinion cites Waring v. Mayor of City of Mobile, 8 Wall. (75 U.S.) 110, 122, 19 L.Ed. 342, but this case is not decisive of the question of whether or not the use and consumption of an article purchased in interstate commerce can be taxed. Waring made actual sales of the imported commodity, and the opinion plainly states: "But the sales of the goods imported in this case were made by the shippers or consignees, and the complainant was the purchaser, and not the first vendor of the imported merchandise, and it is settled law in this court that merchandise in the original packages once sold by the importer is taxable as other property." Waring did not purchase for his personal use and consumption, but·for re-sale, hence the language used.

The opinion cites Fuqua et al. v. Pabst Brewing Co., 90 Tex. 298, 38 S.W. 29, 35 L.R.A. 241, but the writer finds nothing in the decision cited to support the validity of the act before us. One Kingsbury made a contract with Pabst Brewing Company, with Fuqua and others as guarantors of faithful performance by him, which contract was attacked as unenforceable under the anti-trust laws of Texas. Kingsbury purchased the beer for the express purpose of resale, and so handled the beer thus purchased, in an interstate transaction.

The written contract was held invalid because of the anti-trust laws of Texas and subject to such laws, in that the beer lost its interstate character when it became a part of the common mass of property within the state of Texas and was so dealt with by Kingsbury, by disposing of it as a dealer within the state.

The majority do not believe that the use and consumption provisions of the act before us are valid, but are of the opinion that they are unenforceable, and the purpose and effect are to nullify the interstate commerce laws of the United States of America.

These provisions impose a direct burden upon interstate commerce, in that they tend to directly affect the sale price of goods sold and to restrict sales that are made under the protection of the federal government.

Furthermore, the consumption of the cigarettes, purchased through interstate commerce, is a necessary incident to the ownership thereof, and the purchaser, having so acquired lawful title, cannot be thus taxed on the theory of a consumption and use tax without the state of Texas destroying his right of lawful ownership. This we hold cannot be done.

The majority are further of the opinion that, in so far as the act before us undertakes to impose upon and require appellee, Musser, to pay the three cents per package tax on cigarettes sold by him and his agents to purchasers, who have given bona fide orders therefor, and which were brought into Texas by appellee, on the strength of such orders, such act is unenforceable and invalid, and imposes a burden upon interstate commerce.

We have no Texas decisions directly bearing on this proposition of law, but we

have abundant authority defining interstate sales and transactions and holding that Texas is without authority to burden such transactions by legislative acts. See Miller v. Goodman, 91 Tex. 41, 40 S.W. 718; Barnhard Bros. & Spindler v. Morrison et al. (Tex.Civ.App.) 87 S.W. 376; Erwin et al. v. E. I. Du Pont de Nemours Powder Co. (Tex.Civ.App.) 156 S.W. 1097, writ refused; Collins v. Hardeman-King Co. (Tex.Civ.App.) 74 S.W.(2d) 181, and John A. Dickson Pub. Co. v. Bryan et al., 5 S.W.(2d) 980, 981, 60 A.L.R. 983, by the Commission of Appeals, where the authorities are well reviewed, and in which case the Supreme Court expressly approved "the holdings of the Commission of Appeals on the questions discussed in its opinion."

The motive which actuates the appellee can have no bearing upon his right to engage in lawful interstate commerce. The act being lawful, the motive is immaterial. Volume 1, R.C.L., p. 319; 1 Tex. Jur. p. 628; Amuny v. Seaboard Bank & Trust Co. (Tex.Com.App.) 23 S.W.(2d) 287.

Accordingly, the majority are of the opinion that, in so far as the restraining order protects appellee and his agents in soliciting bona fide interstate orders, and in his and their lawful possession of goods brought into Texas, under such orders, and in his and their right to deliver such goods, so ordered, to bona fide purchasers, and protecting such purchasers, in the use and consumption thereof, and in their possession, for such purposes, as against the state comptroller, and those acting under him and by his order and direction, same should be affirmed; but that the restraining order, in so far as it seeks to enjoin the district attorney of Tarrant county and his assistants and deputies, should be vacated, by reason of the fact that these respondents are not even threatening to prosecute appellee or his agents.

The majority are of the further opinion that the state comptroller and those acting under his orders and direction have the lawful right to inspect the goods brought in by appellee or his agents, the premises used by appellee, and the vehicles used for delivery of the goods by him or his agents, and the books and records kept by appellee and his agents, for the purpose of ascertaining what goods are sold in interstate commerce transactions and what goods, if any, are subject to the state tax;

and that therefore such officer and officers have the lawful right to exact and collect all taxes on cigarettes not sold and delivered in bona fide interstate transactions, and to confiscate the goods, where refusal to pay such tax is made; and that all officers in this state have the authority to arrest and prosecute any person who has violated, or may hereafter violate, any provisions of the Cigarette Tax Law, but specifically holding that a purchaser, through a bona fide interstate transaction, who buys for his personal use or consumption, or to give away, shall not be molested in his possession in any wise by any officer of this state.

We have no disposition to protect any person who wrongfully evades any lawful tax imposed by the state of Texas, or any of its lawfully created municipalities, and are not unmindful of the fact that those who care to do so may mingle lawful interstate transctions with unlawful sales and thus evade the payment of the just sales tax now imposed upon intrastate sales of cigarettes among us, and, because the field of evasion is a large and fertile one, the bona fide dealer, through interstate transactions, must, of necesssity, bear the inconvenience and annoyance brought about by a close inspection of his business dealings and transactions; which inconvenience and annoyance his unscrupulous competitor has forced upon all who deal in the same commodity.

Accordingly, the restraining order issued by the district court in so far as it protects appellee and his agents in soliciting bona fide interstate orders, and in his and their lawful possession of goods brought into Texas, under such orders, and in his and their right to deliver such goods, so ordered, to bona fide purchasers, and protecting such purchasers in the use and consumption of the goods, and in their possession for such purposes, as against the appellant, state comptroller, and those acting under him and by his orders and directions, is by us affirmed; and in all other respects the restraining order of the district court is dissolved.

Affirmed in part and reversed and rendered in part; and the clerk of this court is ordered to certify this decision to the trial court for observance.

MARTIN, Justice (dissenting).

I wish to enter my respectful, but most earnest dissent from all expressions in

the majority opinion which purport to carry the protection of interstate commerce law beyond the delivery of the cigarettes to Texas consignees.

I think the case of Austin v. Tennessee, 179 U.S. 343, 21 S.Ct. 132, 138, 45 L.Ed. 224, is in point here. Tennessee had passed a law prohibiting the sale of cigarettes in that state. The case, as stated by Justice Brown for the court, was as follows: "The defendant purchased from the American Tobacco Company, at its factory, in Durham, North Carolina, a lot of cigarettes manufactured by that company at that factory, and thereby it put into pasteboard boxes, in quantities of ten cigarettes to each box; that each of these boxes, known as packages was separately stamped and labelled, as prescribed by the United States revenue statute; that after defendant's purchase the American Tobacco Company piled upon the floor of its warehouse, in Durham, North Carolina, the number of boxes or packages sold, and, having done so, notified the Southern Express Company to come and get them, and said company, by its agent, took them from the floor and placed them in an open basket already and previously in the possession of the Southern Express Company, and in that basket had them transported by express to the defendant's town in Tennessee, and there an agent of the same express company took the basket to defendant's place of business and lifted from it onto the counter of the defendant the lot of detached boxes or packages of cigarettes, and thereupon took a receipt and departed with the empty basket. Thereafter the defendant sold one of these boxes or packages without breaking it, and for that sale he stands convicted."

Justice Brown, upon this state of the case, proceeds: "And yet we are told that each one of these packages is an original package, and entitled to the protection of the Constitution of the United States as a separate and distinct importation. We can only look upon it as a discreditable subterfuge, to which this court ought not to lend its countenance. If there be any original package at all in this case we think it is the basket, and not the paper box."

The Tennessee statute prohibited rather than taxed the sale of cigarettes. But in the case of Cook v. Marshall County, 196 U.S. 261, 25 S.Ct. 233, 49 L.Ed. 471, it was a question of taxation; the only difference being that in that case the state of Iowa imposed an occupation tax rather than a stamp or sales tax upon the cigarettes sold in Iowa. Cook ordered his cigarettes from the American Tobacco Company, at St. Louis, Mo., and they came to him in interstate commerce. He interposed the interstate commerce defense against the tax as the appellee Musser does here, and the Supreme Court of the United States upheld the tax as not being an unlawful burden upon interstate commerce. These two cases from the Supreme Court of the United States, in the humble judgment of the writer, settles the question.

In the judgment of the writer the courts, state and federal, have gone far enough, if not too far, in limiting the right of the states to manage their own affairs, and yet the majority opinion in this case goes so far as to throw the mantle of interstate commerce protection, not only over the appellee, Musser, and his agents in taking orders, shipping and delivering the cigarettes to the purchasers, but even goes so far as to adjudicate the rights of the consignees who are not complaining parties in this suit and seeks to protect such shipments even after they have come to rest in the hands of consignees.

That the appellee, a citizen of Texas, formulated this plan, and established his business outside the state, so that he could ship cigarettes into the state in interstate commerce, for the sole purpose of defeating the state tax, is admitted and fully established in this record. That he had the legal right to do this the writer does not question. But I do most earnestly contend that, when he had delivered his goods to the consignee, the interstate character of the business is at an end and the state then has the right to its tax of 3 cents per package. I cite, also, as supporting this dissent, Brown v. Houston, 114 U.S. 622, 5 S.Ct. 1091, 29 L.Ed. 257; Emert v. Missouri, 156 U.S. 296, 15 S.Ct. 367, 39 L.Ed. 430; May v. New Orleans, 178 U.S. 496, 20 S.Ct. 976, 44 L.Ed. 1165; Monamotor Oil Co. v. Johnson, 292 U.S. 86, 54 S.Ct. 575, 78 L.Ed. 1141.

In the forceful language of Mr. Justice Brown in Austin v. Tennessee, supra, the writer is of the opinion that under the pleading and the facts in this case the interstate defense of Musser, in so far as it applies to the cigarettes after they are delivered in Texas, is "a discreditable subterfuge, to which this court ought not to lend its countenance."