Wheeler, J.
The principal inquiry is, whether parol evidence was admissible to prove that the defendants, who pleaded to the action, executed the contract as sureties; and if so, whether the evidence offered conduced to prove that the plaintiffs had given an extension of time to the principal by which the sureties were discharged from their undertaking-.
Whatever diversity of opinion there may have been upon the, question whether a party who has signed a joint and several bond or other specialty with another, can at law, and as against the obligee, aver and prove that he was but surety where ho appears as principal upon the instrument, that he may do so iii equity appears to bo well settled. (2 Phil. Ev., 303, n. 299, and cases cited, 3d edit.)
In a court of equity parol evidence is always admissible to prove the relationship subsisting between the joint contractors, whatever the form of the instrument, for equity does not regard the form of the instrument. “ I take the principle to be” (said Johnson, J., in giving the opinion of the court in Smith v. Tunno., 1 McCord R., 451) '‘that the relationship which subsists between the, joint, obligors is a matter wholly extrinsic of the written contract, and may therefore be proved by parol, without any violation of the, rule which prohibits the, introduction of parol evidence to contradict or vary a written agreement.” '
' It is immaterial what may be the form of the instrument, whether a simple contract in writing or a specialty, and though all appear upon the instrument as principals in equity parol evidence, is admissible to prove that, one or more of the joint makers or co-obligors signed the instrument in the character of surety. “In equity paról evidence is admissible to show who is principal and who surety.” (Burge on Suretyship, p. 212, 1st Am. ed.; 3 Texas R., 215.)
It is also perfectly well settled that '‘if the creditor, without the knowledge and consent of the surety, expressly or tacitly yielded, give time to the principal by enlarging the credit beyond the period mentioned in the contract, the surety is discharged both in equity and at law.” (3 Wash. C. C. R., 75.)
The law on this subject is thus stated by Mr. Justice Nelson in Gahn v. Niemcewicz, (11 Wend. R., 312:) ‘‘The principle is well established that giving tune by a valid and binding agreement by the creditor to the debtor, u it bout the assent of the surety, operates to discharge him both at law and in equity. The reason of the principle, is that the contract, between the parties is varied and the risks of the surety enhanced.” &c. (Id., 317.) “The doctrine is” (said Chancellor Kent in Ring v. Baldwin) “that the surety is bound by the terms of his contract, and if the creditor, by agreement with the principal debtor, without, the concurrence of the, surety, varies these terms by enlarging the time of performance, the surety is discharged, for he is injured and his risk is increased.” (2 John. Ch. R.. 559.) And even though it be, shown that the extension of time lias worked no injury to the surety, the effect upon his liability is the same. (11 YVend.,-312.) It is the settled doctrine, both at law and in equity, that a surety is not, to be held liable beyond the precise terms of his contract. The creditor has no right to increase his risk without his consent, and cannot therefore vary the original contract, for that might vary the risk. (2 Caine’s Ca. in Err., 57; 5 Wend. R., 503.)
It clearly was the right of the defendants to prove by parol or other evidence that (hey were hut sureties and McGown the principal debtor, and that the plaintiffs knowing this, by a valid agreement gave to the latter without their assent an extension of time beyond that, stipulated in their contract.
The only question of difficulty in the case is whether the evidence offered, if admitted, would have established an agreement to give time, obligatory upon the plaintiffs, and by which their right of action upon (his contract was suspended. If so, and t lie defendants can prove that they were sureties, they were ‘ *36 thereby discharged. But ii there was not such an agreement, the mere giving of time would not operate to discharge the sureties.
In Ring v. Baldwin, before cited, Chancellor Kent said:
“The established doctrine is that mere delay in calling on the principal will not discharge the surety, provided that delay be unaccompanied with any settled or binding contract for that purpose.”
“All the cases of relief of surety have gone upon the ground that time was given to the principal by contract without consent of the surety.” (2 Johns. Ch. R., 559.)
In Reynolds v. Ward the court said : “ The principle to be extracted from the case is that the creditor cannot vary the terms of the contract so as to increase the risk of the surety without discharging him, but the terms are not varied by mere indulgence. To discharge tiie surety it would seem to be necessary that there should be. some agreement by which the plaintiff’s right to prosecute and enforce the fulfillment of the contract is suspended.” (5 Wend. R., 504.)
What is the giving of time within the meaning of the rule is thus explained by Ch. J. Gibbs in Orne v. Young, Holt’s N. P. Rep., 84, cited in 15 Johns. R., 455 u. a. lie said: “What is forbearance and giving time? It is an engagement which t ies the hands of the creditor. It is not negatively refraining, not exacting the money at the time ; but it is the act of tiie creditor, depriving himself of tiie power of suing by something obligatory, which prevents the surety from coming info a court of equity for relief, because the principal having tied his own hands, the surety cannot release them.”
The authorities seem fully to have established the doctrine that there must be an agreement upon a sufficient consideration, and binding upon tiie creditor, to give time, in order to discharge the surety, unless some other circumstance (han a mere indulgence to the"debtor be shown. (15 Johns. R., 433; 13 Id., 174; 6 Sm. & Marsh, 24; 3 Id., 647; 4 Blackf. R., 241; 5 Id., 367 ; 1 Gall. R., 32.)
Tiie question in the present case is whether there was any giving of time by the plaintiffs within the sense and meaning of this exposition of' tiie rule, or whether there was any
agreement by them to give time in eonside.rasion of the additional security.
If there was, it evidently was not observed by tiie plaintiffs. On the contrary, they acted as ii no such agreement existed, for they brought suit long before the period had elapsed to which, it is alleged, the time was extended.
If the giving of tiie mortgage by MeGown was merely voluntary, for the better security of his creditors, and not in consideration of any promise or agreement on their part to give an extension of time on tiie debt due upon this contract, or, if it was given upon some other or different consideration, it could not operate to discharge the defendants of their undertaking as his sureties.
In the ease of Gahii v. "Niemeewicz, before cited, Mr. Justice Nelson said : “It is weii settled that merely taking a new security from the debtor without agreeing to give time will not discharge the surety.” (11 Wend. R., 320, and eases cited.) The learned judge cited several cases in which it liad been held that tiie taking of mere collateral security did not amount to giving time or release the security upon (he original contract, and adds: “The time when the new security becomes due do/'s not vary the effect and operation of it upon the old, as abundantly appears from the above cases. AH of them became due or could not lie, enforced until some time after they were taken ; but this circumstance implied no agreement to postpone the remedy upon the old security. These cases all turned upon the point that no agreement had been made to forbear, in consideration of the new security, at the time it was received. and that the mere receipt of it did not imply one.” (Id., 321-2.)
The taking of a collateral security, though of a higher nature, whether from the principal debtor or a stranger, does not preclude the creditor from suing upon the first contract, and, consequently, does not discharge the sureties upon it. If the original debt is not merged or extinguished by such higher security, *37 but remains unsatisfied, it operates no discharge of the surety. (14 Johns. R., 404.) A mortgage is not a satisfaction, but is a seonrity for the payment of a debt. (3 Tex. R., 6, and authorities cited.) It does not merge or extinguish the original debt, but is a merely collateral security. (Id.)
Note 10.* — Ramo case, 11 T., 001.
Note J7. — Crugor v. Burko, 11 T., G94; Payne v. Powell, 14 T, 000; Iinapp v. Kills, 20 T.> 123: Wybrantsv. Dutch. 2t T., 309; Pilgrim v. Dykes, 24 T , 3S3; Hunter v. Clarke, 28 T., 139; Bob-errs v. Barn, 32 T., 383; Bussell v. Killer, 40 T., 501; Claiborne v. Birgo, 42 T., 08.
The taking of the mortgage in this ease, therefore, did not operate as an extinguishment of the debt, or it would seem as a suspension of the remedy, unless there was an express agreement to that effect. (11 Wend. R., 321.)
“In order to discharge a surety in consequence of the variation of a coutract, ora deprivation of his equitable rights and remedies, uot only the fact of surety-ship must exist, but it must bo known to the creditors at tho time of the act complained of. If the fact appears on the face of the security, that is enough; if not, tiie knowledge of it must be brought home to the creditors by the surety clearly and satisfactorily, because, as all parties appear upon the'iustrnmeut as principals, it is deceptive and calculated to mislead. The surety, therefore, should be holden to strict proof.” (Id.)
The principie involved in the present inquiry ig important, not only in its influence upon the rights of the parties in the present ease, hut as matter of law for the government of future eases; and as all the evidence proposed on this subject was excluded, we deem it proper to abstain from the expression of any decided opinion as to the effect of the evidence offered liad it been admitted. If the court had not excluded the evidence proposed there would, perhaps, have been other evidence introduced by the parties which would have placed the whole transaction in a clear point if view before the court and jury, and would have relieved the, questions in the case from the embarrassment which now attends their investigation. When the caso shall have been remanded the opportunity will bo afforded to the parties to introduce all the evidence, in their possession going to show tho real facts of tho case, both iu respect to the alleged suretyship of the defendants and tho extension of time. The court will then be enabled to apply the law to the ascertained facts of tho case; and it will suffice for tho present to have extracted from tho authorities the general principles applicable to the subject.
The defendant UcGowu not having appealed and standing in the undisputed character of a principal debtor, we see no reason for disturbing tho judgment as to him.
But because the court erred in excluding the evidence offered by the other defendants, the judgment as to them is reversed and the cause remauded for further proceedings'.
Judgment reversed.