## No. 2368.

R. A. LATHAM, ADMINISTRATOR, *v.* HOUSTON FLOUR MILLS ET AL.

1. PROMISSORY NOTE—SIGNATURE OF MAKER.—The president of a corporation who signs the corporate name to a promissory note, and his own name, with the word "President" following, and without inserting the word "by" between the corporate name and his own, does not thereby render himself individually liable as one of the makers thereof.

2. SAME.—A note was thus signed in which the word "we" was used preceding the word "promise" in the body of the note, which, by its terms, was made payable "at our office," *held:*

(1) The presumption must prevail that the office referred to was the office of the corporation.

(2) That the president referred to the corporation as a thing to be spoken of, not in the singular but the plural number.

3. SAME—INDORSEMENT.—On the back of a note thus executed, and above the indorsement of the name of the payee, were written the names of other parties, *held:*

(1) In the absence of any evidence except that afforded by an inspection of the note, such indorsers would be deemed original promissors or sureties.

(2) The real character of the obligation intended to be assumed by such indorsement may be shown by parol evidence.

(3) The note being the individual contract of the corporation, was not changed by the indorsement into a joint contract of the indorsers and the corporation.

4. SAME.—The intention of the indorsers being to make themselves severally as well as jointly bound with the principal, the death of one indorser did not relieve his estate from liability.

APPEAL from Harris.    Tried below before the Hon. James Masterson.

Suit by S. C. Red and W. S. Red, executors of R. K. Red, against the Houston Flour Mills Company, D. P. Shepherd and the administrator of the estate of L. J. Latham, deceased, on a note for five thousand dollars, payable to the order of D. F. Stuart, signed by the Houston Flour Mills Company, and at the time of its execution indorsed on the back by D. P. Shepherd and L. J. Latham.    The note is set forth in the opinion.

Latham's administrator, in his answer, set up as a defense that L. J. Latham was only security for the Flour Mills Company

on the note, and that the note was the joint obligation of the company and D. P. Shepherd and L. J. Latham, and not a joint and several obligation. That the consideration for the note was paid to the Houston Flour Mills Company for its exclusive use and benefit; that the consideration was used solely and exclusively for the benefit and advantage of the company, and that L. J. Latham died in March or April, 1886, and that thereby his estate was discharged from liability on the note.

The plaintiffs replied to this answer that L. J. Latham was vice president of the Flour Mills Company and owned a large amount of its stock, and was deeply interested in its success, and signed the note to further his own interest. Latham signed the note before its delivery.

Judgment was rendered in favor of plaintiff against all the defendants for the amount of the note and interest. From this judgment the administrator of L. J. Latham appealed.

*Jones & Garnett*, for appellant: On their proposition that the court erred in rendering judgment against the defendant as administrator of the estate of L. J. Latham, deceased, for the amount of the note sued on, for the reason that it was proven, and not contradicted, that L. J. Latham was a joint maker of the note, and that it was a joint note and not several; that L. J. Latham's liability was only that of a surety for the Houston Flour Mills Company; that the consideration for the note was money loaned to the company, and used solely and exclusively for the benefit and advantage of the company and not for the use or benefit of Latham, and that Latham departed this life in March or April, 1886; that these facts being proven and uncontroverted, judgment should have been rendered for the defendant and the estate he represented, and the judgment as rendered was contrary to the evidence and unauthorized by law, cited Cook et al. v. Southwick, 9 Texas, 615; Carr v. Rowland, 14 Texas, 276.

On their proposition that a joint maker, who is a surety, is discharged by his death, they cited Glasscock v. Hamilton, 62 Texas, 150; Brandt on Suretyship, section 117; Parsons on Notes and Bills, volume 1, page 250; 1 Story on Equity Jurisprudence, sections 162–164; Fielden v. Lahens, 6 Blatchford, 524; Getty v. Binsse, 49 New York, 385; 9 Howard, United States, 90; 15 Wallace, 140.

*E. P. Hamblen,* for appellee:  On his proposition that the note was the personal undertaking of each maker, and they were liable jointly and severally thereon, cited Daniel on Negotiable Instruments, volume 1, section 94, and cases cited; Daniels, section 400, and cases cited; Byles on Bills, marginal page 6, and cases cited.

On his proposition that Latham having indorsed the note before its delivery to the payee, became liable as an original promissor and maker thereof, and should not be heard to deny that he participated in the consideration, in a contest between him or his representatives and the holder of the note, cited Cook v. Southwick, 9 Texas, 615; Rey v. Simpson, 22 Howard, 341; Good v. Martin, 5 Otto, 91; Brandt on Suretyship, sections 151, 152.

WILLIE, CHIEF JUSTICE.  In the view we take of this case it will not be necessary for us to determine whether or not the rule of the common law, that when a contract is joint only the estate of a surety is discharged by his death, has been in force in this State since the adoption of the Revised Statutes.  The note upon which the suit is brought is as follows:

"HOUSTON, Texas, Aug. 20th, 1885.

"One year (with privilege of two) after date we promise to pay to the order of Dr. D. F. Stuart five thousand dollars ($5,000) at our office in Houston, Texas, with interest at rate of ten (10) per centum per annum from date until paid — interest payable semi-annually."

It is signed "Houston Flour Mills Co., D. P. Shepherd, president."

This manner of signing the obligation of a corporate body has been frequently recognized to be the same as if the word "by" was inserted between the name of the corporation and the name of the officer signing the contract.  It is the separate obligation of the corporation, and not the joint promise of the corporation and the individual who has evidently signed its name as an officer authorized so to do.

The signature of the corporation has to be made by some one of its officers or agents, and the fact that the office of the individual signing next to the corporate name, is stated, shows that he is the officer by whom the signature was made for the corporation, and that he did not intend to become personally bound

for the payment of the note. (Atkins v. Brown, 59 Maine, 90; Castle v. Belfast Foundry Co., 72 Maine, 167; Draper v. Mass. Steam Heating Co., 5 Allen, 338.)

That this is the character of the note in suit, is made more clearly to appear by the use of the words "at our office" in designating the place of payment. In the connection in which these words are used they must mean the office of the company, and do not presumptively include both that and the private office of Shepherd. They show further that the person executing the note treated the corporation as being of the plural number.

If the instrument had been the note of a natural person, signed by him alone, the use of "we" instead of "I" would not have rendered it anything else but the separate contract of the maker. The instrument would have been the same in every respect as if the pronoun "I" had been used. (Whitmore v. Nickerson, 125 Massachusetts, 496; Holmes v. Sinclair, 19 Illinois, 71.)

As the separate and sole contract of the corporation, the note must be construed as if it read "We, the Houston Flour Mills Company, promise to pay at our office," etc., and was signed "Houston Flour Mills Co., by D. P. Shepherd, president."

This being the nature of the contract between the payee and the corporation, the question is, what was the character of the obligation assumed by Shepherd and Latham when they placed their names upon the back of the note? This was done before delivery, and their names appear before that of the payee upon the back of the instrument. In such cases the obligation assumed is considered open to explanation by parol evidence, and may be proved to be of any character consistent with the nature of the transaction. (Cook v. Southwick, 9 Texas, 615; Moies v. Bird, 11 Massachusetts, 436.)

When the proof is not otherwise, our decisions seem to treat such indorsers as original promissors or sureties, entitled to the same rights and subject to the same liabilities. (Cook v. Southwick, supra; Carr v. Rowland, 14 Texas, 275.)

The proof in this case shows that Shepherd and Latham did intend in indorsing the note to become sureties for its payment by the corporation.

We have, then, the case of the note of one individual indorsed by two sureties, and the question for determination is, what is the liability of these parties to the payee? If this note was the obligation of a natural person, and the promise was made in the singular number, and the names of two sureties were signed

to it along with the principal, it would be the joint and several note of the three makers. (1 Daniel on Neg. Ins., sec. 94.) If the note purported on its face to be what the law construes it to mean, i. e., the individual contract of the Houston Flour Mills Company, and the names of Shepherd and Latham were signed to it as sureties, a like construction would be given the instrument, for in this respect there can be no distinction drawn between natural and artificial persons.

With the present reading of the note, were the names of other parties, whether sureties or principals, signed to it in addition to that of the corporation, the note might be construed as joint only. But whilst the indorsement of a note by a stranger may subject the indorsers to as great a liability as if their names were written at the foot of it, such an indorsement does not change or modify the obligation assumed by the principal on the face of the instrument. His contract is evidenced by the language of the note; the contract of the irregular indorsers is what may be written above their names consistently with the transaction. What may be there written is that which the law implies from the indorsement, or which the parties have agreed on as to the liability of the indorsers. This can not affect the individual liability of the maker, for what he has agreed to do is written in the note itself, and not inferred to be different by reason of any contract either express or implied made between others, and contained in another writing or resting in parol. It is on the ground that the contract of the indorsers is not to be found in the note alone, that it is held subject to proof by extrinsic evidence. If parol testimony is admissible to show that, by reason of the indorsement of the sureties, the maker is not liable to the same extent, in the same manner or in the same capacity as the note fixes his liability, then his written contract is varied by parol evidence, which is against a cardinal principle of law. If two or more parties make a joint and several note, and two others indorse it with an agreement either verbal or written, that the makers shall be only jointly bound with them for its payment, this would not affect the several character of the note. If one party makes a note and another indorses it, they in law become jointly and severally liable for its payment. (Good v. Martin, 5 Otto, 91; Story's Prom. Notes, sec. 8.)

But suppose the indorsers should contract that their liability should be joint only, we think this would not release the maker from his several liability. It is perfectly plain that this could

not be done by parol or by implication in either of the supposed instances, which is sufficient for the purposes of this case. The present note, being the individual contract of the corporation, was not changed by the indorsement of Shepherd and Latham into a joint contract of these parties and the corporation. The pronoun "we," which, by the terms of the note—these being the terms of the contract between the company and the payee—meant the company alone, can not have a different meaning given to it by reason of any obligation assumed by the sureties alone. It must still be referred to the party signing the note, and not to it as well as to others whose contract it does not fully establish.

But there was parol evidence admitted which tended strongly to show that the true state of the contract of the indorsers was in accordance with our construction. Shepherd himself, testifying for the defendants, said that they were sureties for the payment of the note, and that "we" in the note referred to the corporation alone. Without attempting to pass upon the effect of this evidence as to the corporation, it certainly tended to show what contract the indorsers intended to make with the payee of the note. They did not intend to be embraced within the term "we," but to bind themselves as in case of irregular indorsers upon the note of a single individual. They did not propose to vary the obligation of the principal, had it been in their power to do so, from an individual note to that of one made jointly with another; but their intention was to become severally as well as jointly bound with the principal, as certainly as if such had been the agreement written above their names. We think that this was the effect of the contract, and that Latham's estate was not relieved from that obligation by reason of his death. The court below was correct in finding for the plaintiffs against all the defendants in the judgment, and it is affirmed.

*Affirmed.*