Hurlbut, J.,
rendered the opinion of the court.
This action was originally commenced in the County Court of . the City and County of Denver on July 8, 1912, by plaintiff in error as plaintiff (hereinafter called plaintiff). Defendants recovered judgment in the County Court, from *31 which an appeal was taken to the District Court. The pleadings were the same in both courts.
The action is based upon a promissory note in words and figures following:
“Denver, Colorado, January 15, 1912.
$575.69.
One hundred and twenty days after date, for value received, I, we (and each of us), promise to pay to the order of The New England Electric Co. five hundred seventy-five dollars and 69/100 dollars at the office of the United States National Bank, Denver, Colorado, with interest at 8 per cent per annum from date until paid.
The makers and endorsers hereof hereby severally waive presentment for payment, protest, notice of non-payment and of protest, and agree to pay ten per cent additional as an attorney’s fee, if collected by an attorney with or without suit.
The Akron Gas & Electric Co.,
(Corporate Seal.) R. A. Shook, President,
H. C. Black, Secretary.”
The Akron’ Gas & Electric Company is not made a defendant, but the action is against Shook and Black as individuals. The complaint is short, pleads the note according to its legal effect, alleges its non-payment, and prays for judgment against defendants for the amount of the note and interest. The answer pleads four defenses: First, a general denial of every allegation of the complaint, except those expressly admitted; second, that neither of the defendants ever signed the note, as a personal obligation, but that the same is the note of The Akron Gas & Electric Company only, and was executed and delivered by that company for a debt due from it to the plaintiff corporation; third, that neither of the defendants ever received any consideration for the execution and delivery of the note, and that the same was executed arid delivered by the Akron company in its corporate capacity solely, and not executed, *32 or intended or understood to be executed, by either of the defendants personally, and was given for a corporate debt due plaintiff, all of which plaintiff well knew at the time of its execution. The fourth defense is equitable in its nature, averring in substance that defendants executed the note as president and secretary of the Akron company, and that, through a mutual mistake on the part of plaintiff and defendants, the latter failed to execute the same unequivocally as the note of said company; and that the note should be reformed so as to express the true intent and meaning of plaintiff and defendants, to wit, an obligation of the Akron company alone. Replication was filed by plaintiff, in which, among other things, it was admitted that the said Akron company was one of the makers of the note; that the note was given exclusively for a debt due plaintiff from that company; and further alleged that, prior to the time the note was signed, defendants were in no way indebted to the plaintiff company.
The case was tried to the court without a jury, and at the close of the trial judgment was rendered in favor of defendants.
The record presents but one controlling question for determination, and that is: Was the note the obligation of the Akron company solely, or were Shook and Black personally ' liable thereon ?
Plaintiff’s position is that the note on its face conclusively shows both Shook and Black to be personally bound for its payment; and in support of such position it contends that the phrase found in the body of the note, “I, we (and each of us),” shows beyond a doubt a plurality of signers or makers, and to hold that the corporation only was liable, would be to ignore the plain meaning of the phrase, and contradict the clear intention of the parties to the note as expressed thereby; and, further, that the absence of the word “By,” “Per,” or a similar term, just after the corporate name, and before the names of Shook *33 and Black, clearly manifests an intention on their part to personally bind themselves as makers. It is useless to deny that this position of plaintiff is supported by reputable authority, and particularly by the earlier English cases, but it is also true that such a position is vigorously condemned by authority of equal repute, including well known text-writers. Our attention has not been called to any decision of our own appellate courts passing on the question under discussion, and, knowing of none, we feel free to follow that line of authority which impresses us as being the most equitable, fair and reasonable. By adopting this course we find no difficulty in following the authorities last referred to, which hold to the rule that, in interpreting a note such as the one before us, the words “President” and “Secretary,” immediately following the individual names signed, should not be rejected as surplusage, or considered descriptio personae, unless it be clearly manifested from a plain reading of the entire note, giving the words used their common and customary meaning, that such parties intended thereby to personally bind themselves as makers. If the note be so read, how can it be reasonably said that there is any ambiguity, uncertainty or doubt, upon the face of the note, as to the intention of Shook and Black in signing the same ? Immediately following the context of the note is the full name of the corporation, “The Akron Gas & Electric Company,” directly under which is signed the names “R. A. Shook, President,” and “H. C. Black, Secretary,” with the corporate seal attached, opposite their names, to the left. A corporation, as such, cannot write a word or do any other physical act. When business necessity requires its name to be subscribed on paper, it can only be placed there by and through its officers or representatives. It is a custom of universal practice in the present day for those who sign the name of a corporation to any business of other document, with the intent to bind the corporation only, to append to the corporate signature their own names, or initials, *34 with their official titles, intending thereby to characterize such signing as an act of the corporation only. Such- is the common understanding throughout the business and commercial world, and it would seem reasonable for a judicial tribunal, when called upon to interpret a note or other written document so signed, to recognize such custom and give it full force and effect. In the instant case we have no hesitancy in saying that the note, with the impression of the corporate seal, when considered as a whole, is free from ambiguity, and shows upon its face that it is the note of the corporation only; and that neither Shook nor Black had any intention, in subscribing their names thereto, other than to do so as officers of the company, with the sole purpose of binding it alone to the payment thereof.. From what standard of reason or common sense can it be maintained that because the word “By,” “Per,” or some similar term, is not written before the names of Shook and Black, or because of the existence of the phrase above quoted, the plain intention of the signers of the note, as appears from the whole context and form of the signatures, should be ignored and held for naught, when it is manifest that the obligation was solely that of the company? Nor do we see any force or reason in the suggestion that, because of the absence of the word “By,” etc., or because of the existence of such phrase in the body of the note, the words president and secretary, following the names of Shook and Black, should be held as descriptio personae. It is the common custom, and so understood, at least in this country, that if a person intends to execute a promissory note in his individual capacity, and thereby bind himself personally, he simply signs his name, and that is the end of it. We venture the statement that it would be a positive curiosity, in this day and age, to find a promissory note, signed by individuals, as individuals only, with descriptive' words, such as appear on the note before us, appended to the signatures. In the early practice of the common law in England there was a general custom *35 in vogue for individuals signing written documents to add to their signatures some title, or abbreviation, which indicated their social or political standing; but no such custom appears to have ever prevailed in this country.
If it be said that our interpretation of the note in issue is not warranted from a fair construction of the context, then the question arises: Does.it, on its face, fairly show ambiguity or uncertainty of intention on the part of the signers, or does it not; and, if it does, is evidence admissible to show the real intent of the parties at the time it was executed? We find the authorities in conflict on this point also. The general trend of authority, including Colorado, supports the affirmative. Rhone v. Powell, 20 Colo., 41, 36 Pac., 899; Lewis v. Mutual Life Ins. Co., 8 Colo. App., 368, 46 Pac., 621. In the case, at bar plaintiff admits in the complaint, and its witness Lawrence testifies, that the Akron company was one of the makers of the note. The proof shows that after the note was executed and delivered the Akron company was adjudicated a bankrupt, and plaintiff presented the note to the referee 'in bankruptcy as a claim against that company. Plaintiff’s conceded agent, J. L. Cain, who was expressly instructed to collect the indebtedness, testified in his deposition that he was instructed to collect the money due, if possible, or, failing in this, to secure a personal note from Shook and Black; or, if unsuccessful in this, to obtain the company’s note for the claim; and that in pursuance of such instructions, having failed to get the money, he solicited a note from Shook and Black personally, but both flatly refused to execute it, offering, however, to execute the company’s note for the indebtedness, whereupon he accepted their offer and obtained the note in issue, with the understanding that it was executed by them solely as a company note, and not in any way as a personal note on their part. This testimony is corroborated in every particular by the testimony of both defendants. The only evidence tending to disprove such testimony was the testimony *36 of an attorney for plaintiff, who testified that Cain made a statement to him, on the street, to the effect that at the time he. (Cain) obtained the note from Shook and Black nothing was said by them or him about their not being personally liable on the note. The court found on this issue in favor of defendants, which is binding upon us.
There is another feature of the case which it might be well to mention, and that is, the corporate seal of the Akron company was impressed on the note. There is a line of authorities holding that a corporate seal on a note similar in form and language to the one before us is a strong circumstance tending to show that the note is that of the corporation only, and not of the individuals whose signatures are followed by their official titles. In Guthrie v. Imbrie, 12 Ore., 182, 6 Pac., 664, 53 Am. Rep., 331, the court had under consideration a note reading as follows:
“For value received, we promise to pay to David Guthrie, or order, ninety days after date, five hundred dollars in U. S. gold coin, without interest.
James Imbrie, Prest.,
J. J. Imbrie, See. G. M. Co.”
The note bore impression of seal reading “Granger Market Co., Portland, Oregon, November 4, 1874.” The court held the note to be that of the company only, and not the individual note of the signers. To the same effect: Means et al. v. Swormstedt, 32 Ind., 87, 2 Am. Rep., 330; Scanlan v. Keith, 102 Ill., 634, 40 Am. Rep., 624; Musser v. Johnson, 42 Mo., 74, 97 Am. Dec., 316. This last case is referred to in Thompson on Corporations, Vol. 4, Sec. 5144. The following cases involve the interpretation of notes similar in form and phraseology to those considered in the Missouri, Indiana and Illinois cases cited, except that the corporate seal was absent.
In Liebscher v. Kraus, 74 Wis., 387, 43 N. W., 166, 5 L. R. A., 496, 17 Am. St., 175, the court construed a note *37 identical in form and import with the one in issue. It reads as follows:
“Milwaukee, January 1st, 1.887.
$637.40.
Ninety days after date we promise to pay to Leo Liebscher, or order, the sum of six hundred and thirty-seven dollars and forty cents, value received.
San Pedro Mining & Milling Company,
F. Kraus, President.”
The court held the note to be that of the corporation alone. The action was against both the company and Kraus. The latter pleaded a like defense to that pleaded by defendants in the instant case. See also 7 Cyc., 553, et seq., and Latham, Adm’r, v. Houston Flour Mills et al., 68 Tex., 127, 3 S. W., 462.
In Scanlan v. Keith, supra, it was held, in considering a note quite similar to the one before us, that the corporation alone was bound, the court saying in part:
. “Most generally there is that on the fact of the instrument itself, and especially where the execution is witnessed by the seal of the corporation attached thereto, that indicates unmistakably it is the obligation of the corporation. It is seldom anyone takes such paper under the belief it is the obligation of the officers executing it on behalf of the corporation. But parol testimony is admissible to- establish the facts, collateral though they may sometimes be, that will make it appear past all doubt whose obligation it is. * * * It is inconceivable a person familiar with the business transacted by a corporation, taking a note executed by its officers under its corporate seal, shohld believe he was obtaining the individual note of the officers whose names are attached to it. It needs no extrinsic evidence to show such a note is the obligation of the corporation. Such is the common understanding from what appears on the face of the instrument itself. A most unreasonable conclusion it would be to hold that a secretary of a corporation who *38 attests such an instrument by his signature and the corporate seal, thereby becomes a joint maker. That is precisely the case here. * * * The same reasoning applies with equal force to defendant, who made the note as president of the corporation, in connection with the secretary, using the seal of the corporation. * * * Dealing with the corporation and taking a note made by its officers, with its corporate seal attached, it is most improbable plaintiff supposed he was obtaining the individual note of the officers. * * * It is still more unusual that persons making an individual note or other obligation would cause it to be attested by the seal of the corporation with which they are connected.”
Also in point: Miller v. Beach, 150 Mass., 140, 22 N. E., 634, 6 L. R. A., 71; Falk v. Moebs, 127 U. S., 597, 32 L. Ed., 266, 8 Sup. Ct., 1319; Draper v. Massachusetts Steam Heating Co., 5 Allen (Mass.), 338; Lacy v. The Dubuque Lumber Co., 43 Ia., 510; Cook on Corporations, Vol. 2, 5th Ed., Sec. 724.
Plaintiff also contends that Shook as president had no authority to bind the Akron company by giving the note; therefore, both he and Black were personally liable for its payment, under a rule of law, as claimed, that, where individuals attempt to consummate a contract on behalf of their principal, and fail in that regard, they become personally liable upon the contract. If such be the law, plaintiff is not in any position, under the record showing here, to invoke the rule. After admitting in its pleading that the instrument was the corporate note of the Akron company, and after submitting it to the brankruptcy court as- a lawful claim against that company, and after adducing sworn testimony in its own behalf to prove that fact, plaintiff should not be heard now to say that the instrument is not and never was the note of the Akron company. Plaintiff may say, however, that at the trial it moved the court for permission to amend its replication by withdrawing therefrom *39 its allegation that the note was that of the company, and substituting therefor a denial of that fact on information and belief, which motion was denied by the court. With such a state' of facts before the trial court we see nothing that suggests error in its denial of the motion and are unable to perceive wherein it abused its discretion in so ruling.
We discover no error in the record. The judgment will therefore be affirmed.

Judgment affirmed.