ADAMS et al. v. KELLY. (No. 709.)

(Court of Civil Appeals of Texas. El Paso. May 31, 1917. On Rehearing, June 21, 1917.)

1. EVIDENCE ☞420(7)—PAROL EVIDENCE—LIABILITY OF INDORSER.

In action by purchaser of bank stock for misrepresentations as to value of its assets, parol evidence was admissible to show that an indorsement on a note among such assets was a qualified indorsement.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1800, 1804, 1943.]

2. BILLS AND NOTES ☞190—PARTIAL INDORSEMENT.

An indorsement intended to be partial only, and not as to the whole amount of the note, is void.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 454, 455.]

On Rehearing.

3. APPEAL AND ERROR ☞907(5)—RECORD—PRESUMPTIONS.

Where record did not show how notice of sale was to be made under certain deeds of trust, the appellate court will not presume, on objection to allowance of item for advertising notice of sale thereunder, that the deeds of trust provided for notice by posting instead of advertisement, in view of Rev. St. arts. 3757, 3759, as to notices of sales of real estate.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2914, 3674, 3676.]

Appeal from District Court, Comanche County; J. H. Arnold, Judge.

Action by R. H. Kelly against E. K. Adams and another. From judgment for plaintiff, defendants appeal. Affirmed.

L. Old, of Uvalde, and H. C. King, of Sabinal, for appellants. H. N. Goodson, of Comanche, for appellee.

WALTHALL, J. R. H. Kelly, appellee, brought this suit in the district court of Comanche county against E. K. Adams and Roy J. Davenport, appellants, for damages alleged to grow out of a transfer to him (appellee) by appellants, of certain bank stock in the Merchants' & Farmers' State Bank of Gustine, Tex. Appellee alleged, in substance, that in May, 1913, he made a certain land deal with the appellants whereby they, in part payment, transferred to him stock in said bank to the amount of $14,100, which stock was taken in said trade by appellee at $20,000; that the bank stock was to be of the total value of $19,000, and if it was not, then appellants were to pay to appellee in money the difference in the correct book value of said bank stock and the $19,000. The cause of action is alleged to grow out of the fact that appellants misrepresented the outstanding accounts owed by the bank; it being alleged that the appellants fraudulently represented to appellee that the outstanding accounts were all paid, but that after the trade was made certain accounts, duly itemized, were found to be outstanding, unsettled, and still owed by the bank. It was alleged in the fourth paragraph of the petition, to which several of the grounds of error are directed, that:

"Among other things in settling said book value there was in said bank as one of its assets a note given by J. T. and Maggie McWherter, dated February 15, 1913, and due October 1, 1913, for $2,619.67, with 10 per cent. interest after maturity, and said note was secured by the said McWherter by certain deed in trust and chattel mortgages, but which was subordinate to other deeds of trust and chattel mortgages to secure other large amounts due said bank by said McWherter, and the said McWherter being actually insolvent, and nothing whatever could be made out of him, except such as might be realized from the foreclosure of said deeds of trust and chattel mortgages, and on this note now complained of nothing could be realized to discharge it out of said mortgage property until the other and prior mortgages were satisfied, and it was a fact and then known to the plaintiff and to the defendants, Davenport and Adams, that the mortgage property was wholly insufficient as security on this $2,619.-67 note, and the plaintiff refused to allow said note to be figured in such settlement, as he considered it insolvent and uncollectable, and added no real value to the assets of the bank, and he then and there refused to have said note considered or to carry out his trade if said note was put into said settlement, because of its insolvency; when and whereupon * * * in order to induce the plaintiff to let said note be put in at its face value, * * * the said Roy J. Davenport, for himself, and acting in the capacity hereinbefore stated, as agent for E. K. Adams, stated * * * to plaintiff that one J. E. McQuatters * * * was liable as an indorser for the whole amount of said $2,619.67 * * * exhibited * * * to plaintiff, the name of J. E. McQuatters written across the back of said note, and which he then declared that McQuatters had written and delivered to

the bank for the purpose of becoming an indorser and guarantor to the bank for the payment of the whole of said money, and by which representations he induced the plaintiff to believe that the said J. E. McQuatters was a surety, guarantor, and indorser for the whole amount of said note, and in that connection the plaintiff alleges that he knew J. E. McQuatters, and knew him to be perfectly solvent, * * * and, so believing in said representations, * * * the plaintiff was induced to permit the whole of said note * * * to be considered in said settlement * * * in fixing the value of said bank stock. * * * "

Appellee alleged the effort made and diligence used to collect the said note, enforced the said deeds of trust and chattel mortgages, and realized a small amount, leaving a balance due on said note of $2,387.06, and alleged:

"The said J. E. McQuatters claims and represents, and so believing therein, the plaintiff alleges the fact to be, that the said McQuatters is not and was not a surety, guarantor, and indorser for the full amount of said McWherter note, and never did sign his name as stated for the purpose of being surety, guarantor, and indorser, but that the said McQuatters was a stockholder in said bank owing in common with Adams and Davenport, and had only become indorser of the McWherter note, and had only signed his name thereon as an indorser on said note to the proportion that his stock in said bank bore to all the balance of the stock, and the said McQuatters refused to pay the balance due on said note, and refuses and repudiates any liability except to the extent aforesaid."

The petition alleges knowledge on the part of appellants of said facts, and that same were concealed from appellee in making the trade; that had he known the facts as he alleges them to be he would not have considered the note in fixing the value of the bank stock. Plaintiff made McQuatters a party defendant to determine what the real amount he might be liable for, and asked for judgment against McQuatters for what amount McQuatters might owe on the note, judgment against Adams and Davenport on the note for whatever balance on the note McQuatters was not liable for, and a judgment against Adams and Davenport for the aggregate sum of the other items as pleaded, alleging same to be $333.02.

Defendants answered by plea of privilege to be sued in the county of their domicile, general demurrer and various and numerous special exceptions, pleas to the jurisdiction and in abatement, general denial, and special answers which will be stated where it is necessary to do so.

The court overruled all exceptions, and, the case having been tried without a jury, judgment was rendered in favor of appellee and against Davenport and Adams for $535, and that appellee take nothing as against McQuatters. The trial court made findings of fact and conclusions of law as follows:

"Findings of Fact.

"(1) I find that about the 8th day of May, 1913, the plaintiff and the defendants entered into a contract in writing wherein, among other things, the defendants were to sell and transfer to the plaintiff their bank stock in the Farm-

ers' & Merchants' State Bank of Gustine, Tex., and which consisted of 141 shares of the par value of $100 per share, and that in the trade between said parties said stock was to be taken as a payment by the plaintiff at the sum of $20,000, provided that the books of said bank should show the stock to be of the book value of $19,000, and in the event the book value of said stock was not $19,000, then the defendants were to pay to the plaintiff in cash the difference between the ascertained book value of said stock and the sum of $19,000.

"(2) I find that by subsequent contract between the parties that the investigation as to the book value of the stock, and the settlement of all of the matters pertaining to said contract, and that said (record here incomplete) contract should be closed up as of date on July 1, 1913.

"(3) I find that the plaintiff on or about July 1, 1913, in all things complied with his part of said contract, and that at said time the capital stock of said bank consisted of 200 shares of the par value of $100 each.

"(4) I find that during the negotiations, at an investigation connected with said trade and prior to July 1, 1913, in the office of the Farmers' & Merchants' State Bank at Gustine, Tex., in Comanche county, Tex., that the plaintiff was shown the notes and books of said bank by the defendant E. K. Adams, acting for himself and Roy J. Davenport; and upon the information and data furnished to the plaintiff by said Adams it was agreed that the book value of said stock was a little less than $19,000, and that for such difference the defendants paid in cash to the plaintiff the amount of the difference between the book value of the stock and said $19,000, said settlement being made on the face of the representations of the defendants.

"(5) I find that at the time stated in the last finding of fact that in Comanche county, Tex., the said E. K. Adams, acting for himself and Roy J. Davenport, fraudulently represented as a fact, and stated as a fact to the plaintiff that one J. E. McQuatters was an indorser on a certain note executed by J. T. and Maggie McWherter, dated February 15, 1913, for the sum of $2,619.67, with 10 per cent. interest after maturity and payable to the Farmers' & Merchants' State Bank of Gustine, Tex., and at said time exhibited to plaintiff the said note, across the back of which was written the name 'J. E. McQuatters,' and that the plaintiff, knowing said McQuatters to be solvent, accepted said note at its face value, in arriving at the book value of said stock, and, but for said representation of said defendants that McQuatters was an indorser on said note, would have not accepted said note at its face value in arriving at the book value of said stock, and that in accepting the same the plaintiff relied on the representations of fact made by the said defendants.

"(6) I find that in fact J. E. McQuatters was not an indorser on said note, and that neither "the Farmers' & Merchants' State Bank of Gustine" nor "J. T. or Maggie McWherter" ever requested the said J. E. McQuatters to indorse said note, and that he did not indorse said note at the request or for the benefit of either of the parties to said note, but, while his name appeared written on said note, that long after the execution of said note, and at the request of the defendants E. K. Adams and Roy J. Davenport, in connection with prior trade of bank stock in said bank between said McQuatters and Davenport & Adams, that the said McQuatters indorsed the same in order to guarantee said note to Davenport and Adams to the extent that his (McQuatters) stock bore to the entire stock of said bank, and that said transaction had between said parties was had before the plaintiff bought stock in said bank, and the only parties to such transaction were Davenport and Adams and J. E. McQuatters, and from said facts I find that as to said bank or as to

said J. T. and Maggie McWherter, and as to plaintiff, that J. E. McQuatters was not liable as an indorser on said McWherter note.

"(7) I find that the extent of the liability of J. E. McQuatters by reason of said contract with Davenport and Adams was the sum of $1,200, and which I find has been paid by the said McQuatters, and that said McWherter note is entitled to said credit of $1,200, and that said amount is the extent of the liability to any party by reason of the name of J. E. McQuatters being written across the back of said note.

"(8) I find that at the time said representations were made by E. K. Adams to the plaintiff that McQuatters was not indorser on said note for the full amount, and that said indorsement made it good, that the same was false and known to said Adams to be false, and that the plaintiff acted thereon in a belief of the truth of said representation, and would have not acted otherwise, and that said representations were made in Comanche county, Tex.

"(9) I find that said McQuatters note was secured by a third lien on certain real estate and a second lien on certain stock, and that said real estate and stock were sold at trustee's sale, and that there was due on account of prior liens on said real estate and stock as follows:

The W. T. Humble indebtedness       $1,973.70
The J. R. Eanes indebtedness           305.29
On account of the Gibbs note           224.00
On account of Taxes, advertising and
  feeding,                             183.68
On account of attorney's fees          250.00
On account of trustee's fees           170.00

And all of which proper and legal charges against said security amount to the sum of $3,106.67.

"(10) I find that the sale of said real estate brought $3,400, and, after deducting said legal charges above shown of $3,106.67, leaves a balance of $293.33, which should be credited on the McWherter note.

"(11) I find to date of sale of said property there was due on the McWherter note $2,684.32, and that the same is entitled to the following credits:

For sale of land          .         $  293.33
For sale of stock                      607.00
By cash paid by J. E. McQuatters     1,200.00

—making a total credit on said note $2,100.33, and which left a balance due on said note of $583.99. And I find that said note is uncollectable in said sum of $583.99.

"(12) I find that at the time the books of the bank were exhibited to the plaintiff for investigation, and that at the time the statement of July 1, 1913, was rendered to the plaintiff for final settlement, that the following charges, which were enforceable against the bank as a liability, did not appear on the books as a charge, and that all of said items were afterwards paid by said bank:

Salary for E. K. Adams              $125.00
Salary for B. F. Gamel                40.00
Gustine Gazette                        6.25
The Tutwiler item                      2.21
Phone expense                          2.25
                                    _____
                                    $175.71

—which were legitimate charges against said bank, and which should have been shown by the defendants in said statement as liabilities of said bank, and which were not shown in said statement or on said books, and I find that said false entries, in which said items failed to be shown on the books, in said statement, and the representations concerning the same, were made and occurred in Comanche county, Tex.

"(13) I find on account of the balance due on the McWherter note of $583.99 and on account of the liability shown in the last finding of fact of $175.71, and that the book value of said stock was misrepresented by the defendant to the plaintiff in the aggregate of said sums, to wit, $759.70, and had the true condition of said stock and the book value thereof been represented to the plaintiff, that the book value of said stock would have been worth $759.70 less than said sum of $19,000.

"(14) I find that, except as to the specific items set out and itemized above, there is no liability of the defendants to the plaintiff on account of any of the other matters set up in the plaintiff's petition; and I find that the balance due on the McWherter note is insolvent and uncollectable, and no part of it, nor the amount of the liabilities of $175.71, has ever been paid to said bank or to the plaintiff by the defendants or any other person.

"Conclusions of Law.

"(1) I conclude as a matter of law that the acts of the defendant Adams constituted actionable fraud, and were committed in Comanche county, Tex., and that the venue is properly laid, and that this court has the right to try said cause, and I refuse to sustain the plea of privilege of defendants, and overrule the same.

"(2) I conclude as a matter of law that this court has jurisdiction of this cause, and refuse to dismiss the suit on this reason.

"(3) I conclude as a matter of law that the name of J. E. McQuatters written on the back of said McWherter note was not an indorsement, but was only written under the private agreement between himself and Davenport and Adams, and was without consideration, and that he has discharged all of his liability by reason thereof.

"(4) I conclude as a matter of law that the books of the bank, which were examined at the time of the investigation and the statement furnished to close up said transaction of July 1, 1913, not showing the various liabilities listed the findings of fact above, and they not being taken into consideration at the time, and having been made and exhibited by the defendants in Comanche county, Tex., constituted actionable fraud, and the plaintiff is entitled to recover from the defendants said amount shown on account thereof in the findings of fact.

"(5) I find as a matter of law that the measure of damages in this case is 141/200 of the total amount which the value of the bank was decreased by reason of the actions and representations of the defendants Adams and Davenport, as is shown in the findings of fact above, and which decreased value aggregates $759.70.

"(6) I conclude as a matter of law that on account of all of the matters stated that the difference in the total debits and credits being the sum of $759.70, and the plaintiff owning at the time 141 shares of stock of said bank, and that the total number of shares in said bank being 200 shares, I conclude that the plaintiff is entitled to recover of and from the defendants E. K. Adams and Roy J. Davenport jointly and severally 141/200 of the sum of $759.70, and which is $535, and I here now render judgment in favor of the said plaintiff, R. H. Kelly, and against the defendants E. K. Adams and Roy J. Davenport jointly and severally the sum of $535, with interest thereon from July 1, 1913, at 6 per cent. per annum and all costs in this behalf expended.

"(7) I conclude as a matter of law there is no liability of the defendant J. E. McQuatters to the plaintiff or any one else, and judgment is rendered that he go hence without day."

Appellants' first seven and the tenth assignments, in various ways have reference to the fourth paragraph of the appellee's petition hereinabove set out, and the action of the court having reference thereto. The first three assignments complain of the overrul-

ing of appellants' special exceptions directed to said paragraph. The fourth and fifth claim error in the court's fifth finding of fact on the issue tendered in said fourth paragraph. The sixth assigns error to the court's sixth finding of fact under said fourth paragraph in holding that appellants fraudulently represented to appellee as a fact that McQuatters was an indorser for the full amount of the note. The seventh assignment complains of the court's seventh finding of fact, fixing McQuatters' liability at $1,200. The tenth assignment asserts error in the court's third conclusion of law. We think we need not discuss these several assignments separately and severally, as they all tend to the one question of McQuatters' liability as indorser on the note under the facts stated and the proof offered under the fourth paragraph of the petition.

At the time appellants and appellee perfected their trade, fixing the book value of the bank stock, the McWherter note was not then due, and the name of J. E. McQuatters was written in blank across the back of the note. The name of McQuatters on the note was the inducement to appellee to consider the note as thus indorsed in fixing the value of the bank stock. When appellee refused to consider the note in fixing the value of the stock, it was alleged, and the court found, that appellants stated to appellee as a fact that McQuatters was an indorser on the McWherter note, and exhibited to appellee the said note across the back of which was written the name, "J. E. McQuatters," and appellee, knowing McQuatters to be solvent, accepted the note at its face value in fixing the value of the bank stock, relying upon the representation of appellants as to McQuatters' indorsement thereon. Appellee in his pleading alleged that McQuatters, in fact, was not a surety and indorser of said note for the full amount thereof, and that he did not sign his name thereon for the purpose of being such surety, guarantor, and indorser, but signed said note as an indorser only to the proportion that his stock in the bank bore to all the balance of the stock.

The question is presented under the several assignments: Can parol evidence be heard to show that McQuatters made the qualified indorsement of the note under the facts alleged by appellee? The trial court held to the view that parol evidence could be heard to show the real facts, and, so holding, overruled appellants' exceptions to the fourth paragraph of the petition, heard the evidence, found that McQuatters was not an indorser for the face value of the note, that he did not indorse the note at the request or for the benefit of either of the parties to the note, but that, after the note was executed and delivered in connection with a prior trade of bank stock in said bank between McQuatters, Adams, and Davenport, McQuatters indorsed the note in order to guarantee said note to Davenport and Adams to the extent that his stock bore to the entire stock in the bank, and that such indorsement was before the appellee bought stock in said bank, and that the only parties to the transaction in which he made the indorsement were himself (McQuatters) Adams and Davenport.

If parol proof could properly be heard in this suit to show the qualified indorsement of McQuatters, his name being written in blank across the back of the note without any qualifying words thereon, the court was not in error in the several matters pointed out in the several assignments.

McQuatters was not the payee of the note; nor, so far as the transaction in which the note was originally made, nor the transaction involved in this suit, did McQuatters receive any benefit by his indorsement of the note. His indorsement was not made at the time the note was executed and delivered by the McWherters, but afterward, and in a separate transaction from the making of the note. McQuatters' liability on the note to the bank at the time he indorsed the note and by reason of his indorsement would be the extent of his liability in fixing the book value of the bank stock.

[1] We think that parol evidence was admissible to show the facts and contract between McQuatters and Adams and Davenport under which the indorsement was made.

The ground for admissibility of parol evidence is stated by Daniel on Negotiable Instruments, § 711 (6th Ed.), to be, that the position of the name upon the paper is one of ambiguity in itself, that it is not a complete contract, as is the case of an indorsement by the payee, which imports a distinct and certain liability, but rather evidence of authority to write over it the contract that was entered into, and that parol evidence merely discloses and brings to light the terms of the unwritten contract that was made between the parties. The rule stated, we think, is sustained by the courts of this state, and we need not review them here. Heidenheimer v. Blumenkron, 56 Tex. 312 and cases there cited. In Marshall Nat. Bank v. Smith et al., 33 Tex. Civ. App. 555, 77 S. W. 237, and in which a writ of error was denied by the Supreme Court, the Court of Civil Appeals for the Fifth District referred to and quoted with approval the early case of Cook v. Southwick, 9 Tex. 615, 60 Am. Dec. 181, in which it was held that:

"'When a person not the payee of a note signs his name upon the back at the time of its inception, without any words to express the nature of his undertaking, he is liable as an original promisor or surety,' and 'it is competent for the person so signing to show by oral or other evidence the real obligation intended to be assumed at the time of signing.'"

The same principle is announced in Burke v. Cruger, 8 Tex. 66, 58 Am. Dec. 102; Latham v. Flour Mills, 68 Tex. 127, 3 S. W. 462;

Hueske v. Broussard, 55 Tex. 201; Barton v. Bank, 8 Tex. Civ. App. 223, 29 S. W. 210.

We think the theory adopted by the trial court in hearing the parol evidence is strengthened, if need be, by the fact as found, that the indorsement made by McQuatters was made in a transaction between McQuatters and Adams and Davenport wholly separate and distinct from the making and delivery of the note, and subsequent thereto, and in which the bank, the owner and holder of the note, was not a party, and not made at the instance of any party to the note.

[2] Again, if, as alleged in the petition, the indorsement was intended to be partial only, and not as to the whole amount of the note, the indorsement was void. Daniel on Negotiable Instruments, § 668 (6th Ed), states:

"A bill or note cannot be indorsed for part of the amount due the holder, as the law will not permit one cause of action to be cut up into several, and such indorsement is utterly void as such."

And this view seems to be sustained by the authorities referred to in the note under the section. Chancellor Kent, 3 Com. p. 59, says:

"The bill cannot be indorsed for a part only of its contents, unless the residue has been extinguished."

In Douglass v. Wilkeson, 6 Wend. (N. Y.) 640, a similar question was presented. In that case, the note was for $2,500, and the holder, the payee, indorsed the note to the plaintiffs for $750, a part only of the contents of the note. The question was whether that was a transfer in the due and ordinary course of business. After a full and able discussion of the question by Chief Justice Savage, Judge Marcy, and others composing the court, they say:

"When, therefore, the contract between the payee of a negotiable note and a third person is of such a character as to give the latter no rights against the maker, * * * that contract is not an indorsement of the note within the custom of merchants."

From these authorities, sustained by our own Supreme Court in Goldman v. Blum & Heidenheimer, 58 Tex. 630, it is our opinion that the court was not in error in the matters pointed out in the assignments, that parol proof was properly heard to show the real facts of McQuatters' indorsement of the note, and that the indorsement, being partial only, was absolutely void.

The question of the reasonableness of the items of charges complained of in the eighth and ninth assignments was matter of fact to be found by the court, and his finding is supported by the evidence. The assignments are overruled. If we are correct in the views expressed under former assignments, the court was not in error in rendering judgment for $535, as claimed in the eleventh assignment.

There was no error in the court's ninth finding of fact as claimed in the twelfth assignment; the items found being matters of contract in the note and deed of trust.

The case is affirmed.

## On Rehearing.

[3] In their motion for a rehearing, appellants insist with much earnestness that this court is in error in sustaining the trial court's ninth finding of fact as to the charge of $58.30 for advertising the notice of sale under the three several deeds of trust. The item is included in the $183.68. Appellants' insistence leads us to state the evidence and our view more specifically than in the original opinion. There is only one deed of trust shown in the record. It is in the usual form, and provides, among other things, that in default of payment the trustee shall take possession of and sell the land after giving notice by posting three notices in three public places, etc. It does not provide for advertisement in a newspaper. If that was the only deed of trust considered by the trial court in allowing the charge for the newspaper advertisement, it is clear that the $58.30 charged for advertising the notice of sale would be error. But the trustee testified:

"I sold that land under a trustee's sale. I was the trustee that sold it. I advertised it and put up notices as the trust deed provided. I sold the land as provided for. * * * I paid the printer $58.50. * * * The next money we got was from the sale of the land. That was a deed of trust on an ordinary form we had on that land. I advertised it in the paper by instructions of my attorney. I think we followed the conditions as laid down in that deed of trust. I will say we did do that; the best of my knowledge we did do that. To the very best of my knowledge, I would say that we followed the conditions of that deed of trust in regard to advertising. If the deed of trust says that I should have advertised it by placing three notices in public places one of which should be at the courthouse door, I did not comply with the instructions in the deed of trust. * * * I only made one sale of that land; made that sale under the original deed of trust. I do not remember whether it was advertised under the second deed of trust or not. I don't remember how the transaction, just how it was done. Yes; it was sold under this deed of trust and the title passed to the bank."

Witness recalled and testified:

"We advertised under the second deed of trust, but only sold under the first deed of trust; only sold one time. * * * The trial and trustee sale was under all three of the deeds of trust. I was under the impression there were just two, but there were three. While it was advertised under the three deeds of trust, yet when the sale came off I offered it for sale under the first deed of trust. My attorney gave notice that there were two other deeds of trust on the land. The trustee's deed was made under the first deed of trust. The proceeds were credited to all three of them."

The trial court allowed as a proper charge the $58.30 paid by the trustee for advertising the notices of sale in the newspaper. The evidence does not show how notice of sale was to be made under the two deeds of trust not shown in the record, nor does the evidence show the amount severally charged

and paid for the notices. The date of the deed of trust shown in the record is November 17, 1910. The dates of the other two deeds of trust are not shown in the record. The statute in force on the date of the execution of the deed of trust shown in the record provides:

"All sales of real estate made in this state under powers conferred by any deed of trust or other contract lien shall be made in the county in which such real estate is situated. Notice shall be given as now required in judicial sales." Article 3759, R. S.

Article 3757, R. S., provides:

"The time and place of making sale of real estate under execution, order of sale, or venditioni exponas, shall be advertised by the officer by having the notice thereof published in the English language once a week for three consecutive weeks * * * in some newspaper published in said county."

It then states what the notice shall contain and the newspaper charges for the publication. It is true that in making a sale under a deed of trust the trustee must abide by and comply with the terms of the deed, but we cannot presume that the deeds of trust not shown or stated in the record provided that notices of sale should be given by posting in three public places, and especially is this true where the trial court, after hearing the evidence, allowed the account for publication of notice. The deed executed by the trustee recites that:

"Notices have been posted one of which has been at the courthouse door, and that a copy of same has been delivered to each of the grantors, etc., and also by advertising same for three weeks in the Comanche Vanguard, a weekly newspaper published in Comanche county, Tex."

We have concluded that, in the condition of the record, we were not in error in sustaining the finding of the trial court in allowing the charge for publishing the notice of the sale.

The motion is overruled.